**James P. BERAN, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 88–0603.**

United States District Court, District of Columbia.

March 18, 1991.

Benjamin W. Cotten, Cotten, Day & Selton, Washington, D.C., for plaintiff.

Michael Martinez, Asst. U.S. Atty., Civ. Div., Washington, D.C., for defendants.

1. The papers filed on behalf of defendants address solely the claims asserted against the United States, the United States Secret Service, the Department of the Treasury, and the individuals in their official capacities. Defendants' motion do not address defendant Insabella's counterclaims.

2. At the summary judgment stage, all facts in dispute are construed in favor of the non-moving party. See Fed.R.Civ.P. 56; *U.S. v. Diebold Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."). Accordingly, the facts

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on defendants' motions for substitution of parties and dismissal or summary judgment.[1] After consideration of the parties' briefs and the record herein, defendants' motion for substitution is granted and motion for dismissal is granted in part and denied in part.

## BACKGROUND [2]

On March 17, 1987, at approximately 6:00 p.m., plaintiff was driving on Pennsylvania Avenue near the White House. At that time, defendants Michael R. Insabella and Jesse J. Blanco, Special Agents of the United States Secret Service, were surveying the perimeter of the White House in an unmarked light colored vehicle.[3] Complaint ¶ 11. According to plaintiff, defendants' car was stopped in the right lane, obstructing traffic movement. Beran Affidavit ¶ 3. In an effort to encourage defendants to advance, plaintiff sounded his horn. Plaintiff observed the two men in the car look over their shoulders and then begin to move forward slowly. Beran Affidavit ¶ 6. When an opportunity to pass was available, plaintiff moved from behind defendants' vehicle to the second lane from the curb gesturing with his middle finger as he did so. Beran Affidavit ¶ 7. Plaintiff alleges that defendants then accelerated into the third lane from the curb and drew alongside Beran's car, permitting the driver of the unmarked car to yell obscenities at plaintiff through the open passenger window. Beran Affidavit ¶ 9.

set out below constitute the version of the events most favorable to plaintiff. After discovery and before trial, however, *defendants* may be able to establish that summary judgment is appropriate on additional issues. At this stage, however, plaintiff's version of the facts must be accepted as true.

3. On the evening on which the events at issue occurred, President Reagan was scheduled to hold a news conference from the White House. The Secret Service believed that because the news conference was the first to be held in several months, "there was a significant public interest in the news conference." See Declaration of Michael R. Insabella ¶ 5.

The two vehicles approached the intersection of New York Avenue and 15th Street, N.W. with the Secret Service vehicle in the third lane from the curb and plaintiff's vehicle in the second lane. When the right turn signal turned green, plaintiff "waved goodbye" to the occupants of the other vehicle and turned onto 15th Street. Beran Affidavit ¶ 11. Plaintiff avers that after making the turn, he "heard a squeal of tires" as defendants turned the corner onto 15th Street and maneuvered their vehicle behind plaintiff's. Complaint ¶ 14.

Plaintiff alleges that traffic on 15th Street was at a standstill, requiring plaintiff to bring his car to a sudden stop. Beran Affidavit ¶ 15. Defendants' vehicle barely avoided colliding with the rear of plaintiff's automobile. Complaint ¶ 15. When traffic began to flow, defendants moved to the right of plaintiff's vehicle, and then "drove in front of the Beran vehicle, forcing his [Beran's] car across the center line towards oncoming traffic." Complaint ¶ 15. The light colored vehicle then stopped suddenly, causing plaintiff to impact defendants' vehicle from behind. Beran Affidavit ¶ 18. At this point, the driver of the light colored vehicle exited his car and ran toward Beran. According to plaintiff, defendant Michael J. Insabella reached into plaintiff's open window, grabbed plaintiff's tie and began striking plaintiff in the head. Beran Affidavit ¶ 20. Plaintiff alleges that defendant then "yanked open" the driver's door and attempted to remove plaintiff from the car. Defendant's efforts were unsuccessful, however, because plaintiff was restrained by his seatbelt. Complaint ¶ 17.[4] Unable to escape from defendant by driving forward—due to the fact that defendants' car was directly in front of plaintiff's—Beran put his car into reverse, accelerating down 15th Street toward G Street. As defendant Insabella was positioned inside the open door, he was struck by the door and dragged for a distance of approximately 65 feet. Declaration of Michael R. Insabella ¶ 22.

After driving in reverse down G Street, plaintiff proceeded south on 14th Street to Pennsylvania Avenue. Complaint ¶ 18. While stopped at the light at the intersection of Pennsylvania Avenue and 14th Street, a bicyclist identified himself to plaintiff as a witness to the altercation and urged plaintiff to return to the scene. Beran Affidavit ¶¶ 28–29. Plaintiff and the witness then returned to the place of the purported attack and flagged down two officers of the Metropolitan Police Department (MPD). Beran Affidavit ¶ 30. As plaintiff relayed the incident to the MPD officers, defendants arrived at the scene. Plaintiff alleges that it was during the discussion which ensued between the MPD officers and defendants that he first learned that defendants were Secret Service agents. Complaint ¶ 20.

Plaintiff was placed under arrest by the MPD officers for assaulting a federal officer and was subsequently arraigned. Beran Affidavit ¶¶ 32 & 43. Grand jury consideration of plaintiff's case resulted in the return of no true bill. Beran Affidavit ¶ 44.

As a consequence of these events, plaintiff alleges that he suffered physical injuries and property damage as well as damage to his reputation. Plaintiff also asserts that as a result of Secret Service interviews with plaintiff's employer, plaintiff was denied a promotion and reassignment to a preferred job position.[5] Beran Affidavit ¶¶ 45–53.

■ On March 7, 1988, plaintiff filed a complaint alleging: assault and battery by defendant Insabella (Count I), false arrest

---

**4.** Plaintiff states that during the time of the alleged attack, the passenger of the light colored car, defendant Blanco, exited defendants' car and approached plaintiff's vehicle. Complaint ¶ 17.

**5.** Plaintiff, a lawyer employed by the General Services Administration, alleges additionally that prior to the incident, he was routinely ad-

mitted into the White House on those occasions when he had to go there for meetings or other business. Since the incident, he has been scrutinized before gaining entrance into the White House. These delays, plaintiff claims, are "particularly embarassing [sic]." Plaintiff's Statement of Material Facts in Dispute at ¶ 54.

and false imprisonment (Count II),[6] and malicious prosecution (Count III), libel, slander and defamation of character (Count IV), civil conspiracy (Count V), negligent hiring, training and supervision of defendants Insabella and Blanco (Count VI), and violations of civil rights under the fourth amendment, fifth amendment, eighth amendment, and 42 U.S.C. § 1985 (Count VII). Plaintiff seeks money damages as well as equitable relief in the form of expungement of his records of his arrest.[7]

Defendants have moved to substitute the United States as the proper party pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, Public Law 100-694. Additionally, defendants have filed a motion to dismiss or in the alternative for summary judgment.

## ANALYSIS

■■■■ After review of plaintiff's statements of material facts in dispute, the court is convinced that this case cannot be disposed of in its entirety through dispositive motions. Resolution of factual disputes, including whether and when agents Insabella and Blanco identified themselves to plaintiff as law enforcement officers, will have to await trial.[8] The court shall at this time, however, address a number of procedural and substantive issues which impact significantly the scope of the litigation and the liability of the parties.

### Proper Parties

■■■ From the outset, the court must rule on defendants' motion for substitution of the United States as the proper party in this case for all common law torts alleged against defendants Insabella and Blanco. The statute upon which defendants rely, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (FELRTCA), was passed by Congress "to protect Federal employees from personal liability for common law torts committed within the scope of their employment while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." Pub.L. No. 100-694, § 2(b), 28 U.S.C. § 2671 nt. (1988). The Act, which has retroactive effect,[9] holds that once the Attorney General or one of his designees[10] certifies that the federal employee was acting within the scope of his or her employment, the federal employee is absolutely immune from suit and the injured party is remitted to remedies against the United States under the Federal Tort Claims Act

---

6. Plaintiff in his complaint charges that defendants falsely arrested and held him for assaulting an officer. In his statement of facts accompanying the complaint and in his brief, however, plaintiff suggests that he is also asserting common law and constitutional claims against defendants for the detention that occurred prior to the actual arrest. *See* Memorandum in Opposition to the Government's Motions to Dismiss at 17. If plaintiff intends to press at trial this allegation of illegal detention, he shall file with the court an amended complaint clearly setting forth this claim.

7. At this stage, it would be premature for the court to rule on plaintiff's request for expungement. It is, however, within the equitable powers of the court to order expungement of plaintiff's record if plaintiff prevails on his claims against the United States. *See United States v. Doe,* 556 F.2d 391, 393 (6th Cir.1977).

8. Because there exist factual disputes over whether probable cause for arrest existed, defendants' motion for dismissal or summary judgment of plaintiff's claims of false arrest/false imprisonment and assault and battery must be denied. Plaintiff's actions for libel, slander, defamation and malicious prosecution will be dismissed for the reasons stated in the opinion. Plaintiff's claim of negligent hiring and training will be dismissed for failure to state facts sufficient to support such a cause of action. Plaintiff asserts only that "[t]he wrongful acts of the Defendants Insabella and Blanco were a direct result of the United States of America and the United States Secret Service negligent hiring, training or supervision. If there had been proper screening of employees, adequate training and the requisite supervision, the conduct of which the Plaintiff complains would not have occurred." *Complaint* ¶ 53. This is totally insufficient. The mere occurrence of the acts alleged, if true, does not alone make supervisors negligent in their training or supervision.

9. *See* Pub.L. No. 100-694, § 8(b), 28 U.S.C. § 2679 nt. (1988).

10. *See* 28 U.S.C. § 2679(d)(1) (1988), 28 C.F.R. § 15.3 (1988).

(FTCA).[11]

In this case, a designee of the Attorney General has certified that defendants Insabella and Blanco were acting within the scope of their employment at the time the alleged common law torts occurred.[12] The court finds therefore that the common law tort claims against the two secret servicemen must be dismissed with prejudice and that the United States must be substituted as the proper defendant.[13]

■ Having established that the United States is the only appropriate defendant for plaintiff's common law tort claims, the court turns now to the issue of whether plaintiff has met the prerequisites to suit under the FTCA. 28 U.S.C. § 2675(a) requires that the aggrieved party present to the appropriate federal agency "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C.Cir.1987) Only after the agency has either issued a final denial of the claim, or six months have elapsed without final agency disposition may suit be commenced in federal district court.[14]

Defendants, in their motion for summary judgment argue that because plaintiff failed to file an administrative claim before filing suit, this court lacks jurisdiction and must dismiss plaintiff's action. Since the time of defendants' filing of their motion for summary judgment, however, plaintiff has filed a valid Standard Form 95 claim with the Department of Treasury.[15] Six months having elapsed since the filing of that claim without final disposition by the agency, the court finds that jurisdiction in this court is proper and that refiling is unnecessary.[16]

*The Discretionary Function Exception to the FTCA*

Although the FTCA constitutes a general waiver of sovereign immunity in tort wherever there would be private liability under the state law where the tort occurred, the Act specifically exempts suits "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." [17]

■ Defendants, in their motion for dismissal or summary judgment suggest that "some of the counts asserted against the United States may be barred by the discretionary function exception to the FTCA." [18] Although defendants do not specify which of plaintiff's claims might be precluded by § 2680(a), the court finds that the discretionary function exception does shield the government from liability from plaintiff's malicious prosecution claim.

Although the scope of the discretionary function exception and its proper invocation

---

**11.** *See* Pub.L. No. 100–694, § 5, 28 U.S.C. § 2679 (1988).

**12.** *See* Certification by John D. Bates, Assistant United States Attorney, Chief, Civil Division, attached to Notice of Substitution By Defendants Michael R. Insabella and Jesse J. Blanco.

**13.** The FTCA specifically bars suits against individual agencies of the United States for personal injuries arising out of the negligence of federal employees. 28 U.S.C. § 2679(a) (1988). Plaintiff's actions against the U.S. Secret Service must, therefore, be dismissed. *See Allen v. Veterans Administration*, 749 F.2d 1386, 1388 (9th Cir.1984). The court notes, additionally, that because the FTCA specifically exempts the United States from libel and slander suits, 28 U.S.C. § 2680(h) (1988), plaintiff's Count IV must be dismissed for failure to state a claim.

**14.** *See* 28 U.S.C. § 2675(a) (1988).

**15.** *See* Memorandum in Opposition to the Government's Motions To Dismiss and for Summary Judgment at 4–5.

**16.** *See Kubrick v. United States*, 581 F.2d 1092, 1098 (3d Cir.1978), *rev'd on other grounds*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (holding that "where the administrative claim is denied before any substantial progress has been made in the pending litigation, the suit need not be refiled to be effective.... To hold that refiling was necessary would involve duplicitous pleadings and wasted effort.").

**17.** 28 U.S.C. § 2680(a) (1988).

**18.** Defendants' Motion to Dismiss or for Summary Judgment at 14.

are much litigated questions,[19] the question of whether malicious prosecution claims fall within the ambit of § 2680(a) is well-settled. In *Gray v. Bell*, 712 F.2d 490 (D.C.Cir.1983), the D.C. Circuit held, "[D]ecisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law.... We think there can be no serious question over the applicability of the discretionary function exception to the decision to initiate prosecution."[20]

Plaintiff presents no facts or arguments which would lead this court to stray from the *Gray* ruling. The facts in this case do not suggest that the decision to prosecute was improperly motivated and the grand jury's return of no true bill does not justify a suit for malicious prosecution. Were this court to find otherwise, prosecutors might perform their duties with hesitation and courts would be flooded with time-consuming claims. Thus, in light of *Gray* and the policy considerations underlying the discretionary function exception, plaintiff's malicious prosecution claim must be dismissed.

■ The applicability of the discretionary function exception to plaintiff's common law assault and battery and false arrest/false imprisonment claims is less certain than is the issue of whether the discretionary function exception covers malicious prosecution actions. Courts have recog-

nized that an overly broad conception of "discretionary function" would eviscerate § 2680(h) which makes the government liable for certain intentional torts committed by law enforcement officers.[21] The *Gray* court reconciled the apparent conflict between the two sections of the Act by defining, as a matter of law, that police officers do not perform discretionary functions, making it "rare that a suit permissible under the proviso to section 2680(h) is barred by section 2680(a)."[22] The Court of Appeals for the Third Circuit, in *Pooler v. United States*, 787 F.2d 868 (3rd Cir.1986), echoed the *Gray* court's characterization of the nature of police officers' duties[23] and reconciled the § 2680(a)/§ 2680(h) conflict by limiting the intentional tort proviso "to activities in the course of a search, a seizure or an arrest."[24]

Although the *Gray* and *Pooler* conclusion that police work is ministerial and not discretionary is arguable as a matter of common understanding[25] and semantics[26], rejection of the *Gray/Pooler* reasoning would require this court functionally to read § 2680(h) out of the FTCA. Since granting of defendants' motion for summary judgment with respect to plaintiff's charges of assault and battery and false arrest/false imprisonment would require this court to disregard basic principles of statutory construction,[27] defendants' mo-

19. *See* Lester Jayson, 2 *Handling Federal Tort Claims* § 248.01 at 12–20 (1990) (surmising that "[p]robably no other provision of the Federal Tort Claims Act has been regarded as more difficult to understand or to apply.").

20. *Gray v. Bell*, 712 F.2d 490, 513–14 (D.C.Cir. 1983) (footnote omitted).

21. *See Sutton v. United States*, 819 F.2d 1289, 1292–97 (5th Cir.1987); *Caban v. United States*, 671 F.2d 1230, 1234 (2d Cir.1982).

22. *Gray v. Bell*, 712 F.2d 490, 508. The Court in its opinion draws a distinction between "routine execution of discretionary decisions and discretionary decisions themselves, with the discretionary function exception of the FTCA immunizing the latter but not the former." *Id.* at 515 (footnote omitted).

23. *See Pooler v. United States*, 787 F.2d 868, 872 (3rd Cir.1986) (stating "It is hard to imagine

instances in which the activities of officers engaging in searches, seizures or arrests would be anything other than operational.").

24. *Id.*

25. *See Caban v. United States*, 671 F.2d 1230, 1232 (2d Cir.1982) (stating "all federal employees exercise a certain amount of discretion in the discharge of their responsibilities. In short, no federal employee is a robot.").

26. *See* Webster's II New Riverside University Dictionary 385 (1984) (defining "discretionary" as "Left to or regulated by one's own judgment or discretion.").

27. *See Zeigler Coal Company v. Kleppe*, 536 F.2d 398, 406 (D.C.Cir.1976) (holding that "a statute should not be construed in such a way as to render certain provisions superfluous or insignificant." (footnote omitted)).

tion to dismiss these counts must be denied.

## PLAINTIFF'S CIVIL RIGHTS CLAIMS

In addition to his common law claims, plaintiff alleges a battery of constitutional and statutory violations. Specifically, plaintiff brings *Bivens* actions against defendants Insabella and Blanco for violations of 42 U.S.C. § 1985, the fourth, fifth, and eighth amendments.[28]

 With respect to plaintiff's 42 U.S.C. § 1985 claim, the court agrees with defendants that plaintiff has failed to state a valid claim. Plaintiff alleges that as a consequence of defendants' agreement to "conspire[ ] to fabricate their story,"[29] plaintiff, a lawyer employed by the General Services Administration, was denied a job promotion and relocation and was restricted in his access to the White House. Officers Insabella and Blanco's actions, plaintiff contends, prevented him "by force, intimidation, or threat ... from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof."[30] Plaintiff does not, however, present any facts to support a finding of conspiracy. Moreover, even if the court were to overlook plaintiff's pleading deficiencies and assume that plaintiff could offer sufficient facts to support his conspiracy cause of action, plaintiff's § 1985 claim would still have to be dismissed. Legislative history clearly indicates that in enacting § 1985, Congress did not intend to create a federal tort law applicable to all tortious conspiratorial interferences with the rights of individuals. Rather, Congress passed § 1985 to address conspiracies motivated by class-based discrimination.[31] In light of the fact that plaintiff does not present any facts to indicate that the purported conspiracy was prompted by racial or other class-based animus, his § 1985 claim will be dismissed.

 Plaintiff's fifth amendment claim must also be dismissed. In order to make a cognizable *Bivens* claim, the plaintiff must meet a "heightened pleading standard" and "specify the 'clearly established' rights [he] allege[s] to have been violated with ... precis[ion]." *Martin v. Malhoyt,* 830 F.2d 237, 254 (D.C.Cir.1987), *reh'g denied,* 833 F.2d 1049 (D.C.Cir.1987), *quoting Smith v. Nixon,* 807 F.2d 197, 200 (D.C.Cir. 1986) and *Hobson v. Wilson,* 737 F.2d 1, 29 (D.C.Cir.1984), *cert. denied, Brennan v. Hobson,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Plaintiff's fifth amendment claim fails to meet this heightened pleading standard. Plaintiff alleges that his substantive due process rights were violated "because the outlandish Government conduct exceeded the bounds of the flawed arrest."[32] The incursions on personal liberty to which plaintiff refers,[33] however, do not make out a due process claim.[34] Since aggregation of disparate

---

**28.** *See Carlson v. Green,* 446 U.S. 14, 18–23, 100 S.Ct. 1468, 1471–1474, 64 L.Ed.2d 15 (1980) (holding that pursuit of damages via the FTCA is not a bar to recovery under *Bivens* ).

**29.** Memorandum in Opposition to Government's Motion to Dismiss and for Summary Judgment at 25.

**30.** 42 U.S.C. § 1985(1) (1988).

**31.** *See Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1797–1798, 29 L.Ed.2d 338 (1971). Although the Supreme Court in *Griffin* dealt with a § 1985(3) cause of action, the Congressional history relied upon by the Court is generally applicable to all of Section 1985. *See Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 346 (5th Cir.1981), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

**32.** Memorandum in Opposition to the Government Motions to Dismiss and For Summary Judgment at 21.

**33.** Plaintiff mentions such acts as "unlawful arrest and beating," "reporting of false facts to the Metropolitan Police Department," "causing him to be detained at a Police precinct although he was know to have committed no wrong," "joining in an agreement to perpetuate those false facts," "causing initiation of criminal charges known to be false," "communicating the false allegations to Plaintiff's co-workers and superiors," and "preventing Plaintiff from redressing these wrongs." Memorandum in Opposition to the Government's Motions to Dismiss and for Summary Judgment at 21–22.

**34.** *Cf. Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (holding that "*all* claims that law enforcement offi-

wrongs alone does not create an actionable substantive due process claim, plaintiff's fifth amendment claim will be dismissed.

 In addition to his due process and civil conspiracy claims, plaintiff presents an eighth amendment claim.[35] Given the facts of this case, however, the court finds the eighth amendment to be inapposite. The cruel and unusual punishments clause "was designed to protect those *convicted* of crimes," *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977) (emphasis added) and is relevant "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Id.* at 671, n. 40, 97 S.Ct. at 1412 n. 40. In light of the fact that plaintiff Beran was never prosecuted or convicted, his eighth amendment claim is inappropriate and will be dismissed.

Remaining at issue are plaintiff's allegations of violations of the fourth amendment. Plaintiff's fourth amendment claims are two-fold.[36] First, plaintiff asserts that his arrest was illegal because defendants had no probable cause. Second, plaintiff alleges that in effecting the arrest, defendant Insabella used excessive force.

 Plaintiff asserts that there was no probable cause to arrest and charge him for assault and battery of a federal officer. 18 U.S.C. § 111 (1988).[37] Indeed, construing the facts in the light most favorable to plaintiff, as the court must at this stage, it appears that defendant Insabella lacked probable cause to stop plaintiff and arrest him. Although plaintiff admits to putting

his car in reverse and causing Officer Insabella injury, the court must at this stage accept as true Beran's assertion that defendants did not identify themselves as law enforcement officers and that plaintiff's actions were taken in self-defense. Viewing the facts in this light, plaintiff raises a valid fourth amendment claim.

Defendants argue that even if plaintiff does raise a legitimate fourth amendment claim, they are entitled to qualified immunity. Citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), defendants argue that since they acted in an objectively reasonable fashion, they are entitled to immunity from suit. Although defendants state the law accurately, they have failed to demonstrate that reasonable law enforcement officers confronted with the situation would have acted as they did. Accepting the truth of Beran's version of the facts—a version which insists adamantly that no probable cause existed—it is difficult to accept that a reasonable officer would have pursued and stopped plaintiff and effected an arrest. Since the undisputed facts do not support the objective reasonableness of their actions, defendants' claim of qualified immunity must be denied and resolution of factual disputes must await trial.[38]

Plaintiff, in addition, alleges that his fourth amendment rights were violated when Officer Insabella used unreasonable force when he punched plaintiff and forcibly attempted to remove plaintiff from his car. Defendants argue that the use of force in the apprehension of plaintiff was

cers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach" ).

**35.** Plaintiff alleges that the defendants inflicted "cruel and unusual punishment in that he was ... kept incarcerated a longer time than was standard or necessary." Complaint ¶ 59.

**36.** In Count VII of his complaint, plaintiff names as defendants both Insabella and Blanco. However, plaintiff's own version of the facts show only that Blanco was a witness to the events and not an active participant. Blanco is

not alleged to have arrested, detained, physically assaulted, or done anything whatsoever directly to plaintiff that would state a cause of action. Since the complaint fails to allege any factual basis for imposing personal liability on Blanco, the fourth amendment claims against him will be dismissed.

**37.** Secret Service agents are covered under 18 U.S.C. § 111. *See* 18 U.S.C. § 1114 (1988).

**38.** *See Martin v. Malhoyt*, 830 F.2d 237, 262–63 (D.C.Cir.1987). *Compare Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (finding that officers' actions were objectively reasonable taking into account facts construed in favor of the plaintiff).

not unreasonable and that summary judgment on this count should be granted. In the governing case in this area, *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court held that the constitutionality of the use of force in seizure cases must be measured by an objective reasonableness standard.[39] The question before the court is whether looking at the totality of the circumstances, Insabella acted in an objectively reasonable manner. Because factual disputes exist, the court is precluded from making a determination at this time whether Officer Insabella acted reasonably and will leave to the jury to determine whether, balancing individual rights against law enforcement interests, unreasonable force was used.[40]

## CONCLUSION

Due to the existence of material factual disputes, this case cannot be fully resolved on summary judgment. Deficiencies in plaintiff's pleadings, however, allow the court to narrow the issues remaining in dispute. Having concluded that jurisdiction in this court is proper, that the United States is the appropriate and sole defendant for plaintiff's common law tort allegations, and that plaintiff's fourth amendment *Bivens* claims against Officer Insabella are the only constitutional claims with possible merit, this case shall be set for discovery and trial.[41]

A separate order shall be issued this date.

## ORDER

Upon consideration of defendants' motions for substitution of parties and dismissal or summary judgment, the opposition and reply memoranda thereto, and for the reasons set forth in the Court's Memorandum Opinion of this date, it is hereby

ORDERED, that defendants' motion for substitution of parties is granted. The United States is hereby substituted as the sole defendant in Count I (Assault and Battery), Count II (False Arrest/False Imprisonment), Count III (Malicious Prosecution), Count IV (Libel, Slander, and Defamation of Character), and Count VI (Negligent Hiring, Training and Supervision), and it is further ORDERED that defendants Insabella and Blanco are dismissed from these counts. The United States Secret Service and the Department of the Treasury are dismissed from this action.

ORDERED, that defendants' motion to dismiss or for summary judgment is granted in part and denied in part. Plaintiff's Count III (Malicious Prosecution), Count IV (Libel, Slander, and Defamation of Character), and Count VI (Negligent Hiring, Training and Supervision) are hereby dismissed. Additionally, plaintiff's claims under 42 U.S.C. § 1985, and the fifth and eighth amendments are hereby dismissed. Plaintiff's fourth amendment claims against Officer Blanco are also dismissed, and this action now stands dismissed as to Officer Blanco.

The only remaining claims are plaintiff's tort claims against the government—Count One (Assault and Battery) and Count II (False Arrest/False Imprisonment)—and plaintiff's fourth amendment claims against Officer Insabella. It is further

ORDERED, that the parties shall each set forth in 30 days a discovery plan including a statement of the length of time needed to complete discovery.

SO ORDERED.

---

**39.** *See Tennessee v. Garner*, 471 U.S. 1, 7–12, 105 S.Ct. 1694, 1699–1701, 85 L.Ed.2d 1 (1985).

**40.** *Compare Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C.Cir.1987) (determining that facts admitted by the plaintiff supported a court finding on summary judgment that defendant acted in an objectively reasonable fashion when he grabbed plaintiff, threw him into the driver seat, and slammed the car door on plaintiff's leg).

**41.** Plaintiff's motion to reconsider the order issued on April 20, 1988 which granted defendant Insabella leave to file his counterclaim without prejudice to his ability to respond to plaintiff, was previously denied because Insabella did not waive any rights when he sought and obtained leave of court to file a response to the complaint and then later file his counterclaim.