# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2691

_____

| | | |
|---|---|---|
| Lesa M. Primeaux, formerly known as | * | |
| Lesa M. Lamont, formerly known as | * | |
| Lisa M. Bad Wound, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| United States of America, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: April 15, 1998
Filed: July 27, 1998

_____

Before LOKEN and LAY, Circuit Judges, and PRATT,[1] District Judge.

_____

LAY, Circuit Judge.


This matter arises out of a suit against the United States under the Federal Tort Claims Act (FTCA) seeking damages for sexual assault by a Bureau of Indian Affairs (BIA) police officer. This is the second time the case has been before this court. See Primeaux v. United States, 102 F.3d 1458 (8th Cir. 1996) (Wollman J., dissenting).

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

At the time of the assault in November 1991, Lesa Primeaux, the victim, was a 21-year-old Native American whose car had become stuck in a snowbank on a rural South Dakota highway.[2] The district court initially found Primeaux was walking toward the town of Martin on a cold night when Kenneth Scott, a BIA officer from the Rosebud Reservation, approached her in his police car. Scott was driving a white government vehicle with a police light bar on top under BIA authority outside the reservation. He was returning from a police training session in New Mexico. Scott offered to give Primeaux a ride, which she accepted. He subsequently drove off a side road, assaulted and raped her. This suit followed.

The district court originally denied vicarious liability on the ground that the police officer was not acting within the scope of his actual authority since he was outside his jurisdiction. App. at 259. The district court concluded that because the officer was not acting within his actual authority, there was not a sufficient nexus under state law to demonstrate the foreseeability of the assault. On appeal, this court found the district court had failed to consider the government's liability under the doctrine of apparent or ostensible authority.[3] Primeaux, 102 F.3d at 1462. We reversed and remanded to the district court. Id. at 1463.

On remand, the district court expressly considered the law of apparent authority, but once again found there was an insufficient nexus between the assault and the scope of the officer's either actual or apparent authority. Primeaux v. United States, No. 94-5048, slip op. at 9-10 (D. S.D. June 4, 1997). Primeaux once again appealed. She now

---

[2]The detailed facts of this case are set forth in our previous opinion, Primeaux, 102 F.3d at 1460.

[3]The South Dakota Supreme Court points out that "[a]pparent authority is analogous to 'ostensible' authority which is defined in SDCL 59-3-3 as authority 'such as a principal intentionally, or by want of ordinary care, causes or allows or allows a third person to believe the agent to possess.'" Leafgreen v. American Family Mut. Ins. Co., 393 N.W.2d 275, 277 n.4 (S.D. 1986).

argues that the findings of the district court are mixed questions of fact and law and that this court must review the district court's second decision de novo. The government on the other hand urges this court to apply the clearly erroneous standard. We find that although the district court discussed the doctrine of apparent authority, it nevertheless failed to properly apply this doctrine as set forth under South Dakota law.[4] In doing so, we find that the trial court erred as a matter of law.

## I. Apparent Authority

Restatement (Second) of Agency ("Restatement") as adopted by the South Dakota Supreme Court requires that, in applying the rule of apparent authority, a court must view the agent's conduct through the eyes of the victim rather than from the agent's point of view. See Leafgreen, 393 N.W.2d at 280 ("Under section 261 and the theory of apparent authority, however, the agent's conduct is seen through the eyes of the third party."); see also American Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556, 566 (1982) (quoting Restatement (Second) of Agency § 261, comment a, p. 571); Grease Monkey Int'l, Inc. v. Montoya, 904 P.2d 468, 475 (Colo. 1995) (same); Freeman v. Royal Shield Entertainment, Inc., 411 So.2d 559, 561 (La. Ct. App. 1982) ("One must look from the viewpoint of a third person to determine if apparent agency has been created."). Therefore, in this case, the inquiry should have been whether, from Primeaux's viewpoint, being approached by an officer whose police car lights are flashing would make a reasonable person believe that the officer was acting within the scope of his employment as a police officer.

The district court concluded that the officer had not exercised apparent authority partly because the court was not convinced the "police vehicle had anything to do with

---

[4]We deem it noteworthy and relevant to the factual circumstances of this case that S.D. Codified Laws § 59-6-3 (Michie 1993) reads: "A principal is bound by acts of his agent under ostensible authority, to those persons only who have in good faith, and without negligence, incurred a liability or parted with value upon the faith thereof."

the assault which later takes place." Primeaux, No. 94-5048, slip op. at 10. The district court's analysis on this point slights the South Dakota law that requires ostensible authority to be viewed through the eyes of the third person. The undisputed facts show that, after the officer stopped his police car in the lane across from the victim, he turned on the red flashing police light bar on the top of his vehicle. Id. at 3. Furthermore, the victim stated it appeared to her that the officer was wearing a police jacket when he approached her. App. at p. 28. The victim's reliance on Officer Scott's display of his badge of authority, i.e., the red flashing lights, is rejected in part by the district court because the officer testified that he stopped to offer a ride as an individual and not as an officer. Id. at p. 134. The district court specifically found "that the officer was not purporting to act on behalf of the government by stopping, detaining or arresting plaintiff for any violation of law." Primeaux, No. 94-5048, slip op. at 8.

The difficulty we have with this analysis is that it ignores the objective, undisputed fact that the police lights were turned on when the officer approached the victim. The district court erroneously accepted, contrary to South Dakota law, the officer's stated intentions without consideration of the victim's reliance on the fact that the officer had turned on the flashing red lights of the police car. Viewing this evidence through the eyes of the victim, we deem it obvious that any ordinary citizen would believe under similar circumstances that an officer of the law had stopped to render assistance.

The fact that the victim was not arrested, involuntarily stopped or detained is barely relevant under these circumstances. An officer's duty is not limited solely to the arrest and apprehension of law violators. An officer of the law often displays his apparent or actual authority to offer assistance to citizens, especially those in distress. Any citizen, especially on a "dark, cold night in the middle of nowhere" would take more assurance in and place greater reliance on assistance offered by an officer of the law than by a complete stranger.

The district court also discounted Primeaux's stated reliance on Scott's apparent authority because it found her reliance lacked "credibility." The district court did not fault Primeaux's believability,[5] but rather found that she voluntarily accepted the ride "to escape the elements." But once again, this discussion fails to view the conduct of the officer through the eyes of the victim when he turned on his red police lights and specifically told her that he was a BIA police officer.

The district court also concluded that the events leading to the assault were not relevant because, it reasoned, the existence of apparent authority need be determined only at the time Primeaux voluntarily entered the officer's car. The district court concluded that after Primeaux got into Scott's police car, "there was little or no action she could have taken once she entered the vehicle." Primeaux, No. 94-5048, slip op. at 8. The district court therefore focused its analysis only "at the point plaintiff entered the front seat of the vehicle." Id. We find this to be an erroneous view of the law as well.

In evaluating the question of ostensible authority, the district court must review the totality of the events from the time the officer turned on his police car lights to the time of the assault. See McKinney v. Pioneer Life Ins. Co., 465 N.W.2d 192, 195 (S.D. 1991) (whether an agent acted within the scope of apparent authority is to be determined from all the circumstances of the transaction); Dahl v. Sittner, 429 N.W.2d 458, 462 (S.D. 1988) (same). The district court concluded that Primeaux submitted to the assault because of Scott's overpowering physical presence. However, this ignores Primeaux's statement that when Scott stopped and directed her to get out of the car, she believed he was a "cop." In considering the totality of circumstances, one cannot ignore the finding of the district court that:

---

[5]In fact, in the first case, the district court found that Primeaux was more credible than Officer Scott. App. at p. 251.

> [O]n a cold winter night in [the] middle of practically nowhere near the Indian reservation, <u>and a person who appeared to be an officer</u>, a person with a strong personality such as the Court observed, picking up a strange and submissive type of personality from the roadway, is an <u>authoritative figure as must have been presented to her</u>, leaves (sic) the Court to no other conclusion that he faced a situation — she faced a situation through the use of force, coercion, or threats with the apparent — with his overriding presence <u>accompanied by an apparent power of execution</u>.

App. at p. 252 (emphasis added). Based on the foregoing, we conclude that the district court failed to properly apply the principles of apparent or ostensible authority in accordance with South Dakota law.

## II. <u>Foreseeability</u>

The district court found that because Scott was not acting within the scope of his apparent or actual authority, the assault was not foreseeable. As the South Dakota Supreme Court has acknowledged, the issue of foreseeability as to vicarious liability is distinct from the issue of foreseeability in negligence cases.[6] Here, the question is

---

[6]In <u>Leafgreen</u>, the court observed:

> One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, "foreseeability" in this context must be distinguished from "foreseeability" as a test for negligence. In the later sense "foreseeable" means a level of probability which would lead a prudent person to take effective precautions whereas "foreseeability" as a test for respondeat superior merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [citations omitted] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one "that may fairly be regarded as typical

whether the agent's employment put him in a position of trust where harmful conduct to a third party would not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business. Leafgreen, 393 N.W.2d at 280-81. We find our statement in Red Elk controlling here:

> A police officer is a public servant given considerable public trust and authority. Our review of the jurisprudence indicates that, almost uniformly, where excesses are committed by such officers, their employers are held to be responsible for their actions even though those actions may be somewhat removed from their usual duties. This is unquestionably the case because of the position of such officers in our society.

Red Elk v. United States, 62 F.3d 1102, 1107 (8th Cir. 1995) (quoting AppleWhite v. City of Baton Rouge, 380 So.2d 119, 121 (La. Ct. App. 1979).[7]

---

of or broadly incidental" to the enterprise undertaken by the employer. Leafgreen, 393 N.W.2d at 280 (quoting Rodgers v. Kemper Const. Co., 124 Cal. Rptr. 143, 148-49 (Cal. Ct. App. 1975)).

[7]This court emphasized a similar observation in the first appeal:

[W]hile it is unfortunate and uncommon, sexual misconduct by an officer is in some circumstances reasonably foreseeable. . . . It is no less foreseeable that such an abuse of authority could occur while the officer is not technically on duty, but rather possesses the apparent authority sufficient to cause a person to rely on or fear that authority and succumb to sexual advances. Cases holding employers liable for sexual assaults or excessive use of force by police officers reason that such conduct is foreseeable because of the unique position of trust held by such officers. Primeaux, 102 F.3d at 1463 (citations omitted) (emphasis added).

-7-

In cases involving scope of employment, although the factual issues must be resolved, the ultimate holding turns on state respondeat superior and agency law. Here, the factual issues are no longer in dispute. The only remaining question is whether under the facts found by the district court, the BIA will be liable as a matter of law for Scott's assault. We find as a useful analogue Justice Souter's analysis in the recent sexual harassment case, Faragher v. City of Boca Raton, 66 U.S. L.W. 4643 (June 30, 1998).[8] The Court relied on the Restatement § 219(d) in stating:

> an employer "is not subject to liability for the torts of his servants acting outside the scope of their employment unless . . . the servant purported to act or speak on behalf of the principal and there was reliance on apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."

66 U.S.L.W. at 4650.

In the present case, there is little doubt the officer purported to speak on behalf of the BIA (who authorized his journey): (1) Scott turned on his red lights atop the police car, (2) Scott told Primeaux he was a BIA officer, (3) Primeaux testified she followed Scott's command to get out of the car because he was a "cop," and (4) the trial court found that Scott accomplished the tort by the existence of his agency relationship.[9] We therefore vacate the judgment of the district court with directions to

---

[8] The Supreme Court also observed in Faragher: "In the instances in which there is a genuine question about the employer's responsibility for harmful conduct he did not in fact authorize, a holding that the conduct falls within the scope of employment ultimately expresses a conclusion not of fact but of law." 66 U.S.L.W. at 4649.

[9] As set forth, the district court observed "his overriding presence accompanied by an apparent power of execution" allowed him to carry out his assault. On the basis of this finding, Judge Wollman observed in his original dissent that Ms. Primeaux submitted to Scott's demands out of fear and intimidation arising from Scott's "apparent position of authority as a police officer and as one who appeared to have the power to carry out his commands." Primeaux, 102 F.3d at 1463-64 (Wollman J., dissenting) (emphasis added).

enter judgment as to liability for the plaintiff; the cause is remanded to the district court for a determination of damages.[10]

---

[10]We need pause only briefly in response to the dissent. It should be noted that the government has never asserted before the trial court or this court the new theories presented in the dissent. First, the dissent overlooks that South Dakota law (the place of the wrong) defines the standards by which "scope of employment" is to be measured. As Judge Loken earlier observed in writing this court's opinion in Brown v. Armstrong: "Under the FTCA, the law of the place of the alleged tort governs the scope of employment question." 949 F.2d 1007, 1012 n.7 (8th Cir. 1991). See Williams v. United States, 350 U.S. 857, 76 S. Ct. 100, 100 L.Ed. 761 (1955); see also 28 U.S.C. § 2674 (1996) ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, . . . .").

South Dakota cases have adopted the Restatement which defines scope of employment to include both actual and apparent authority. See Restatement §§ 219(2)(d) and 265(1); see also Leafgreen, 393 N.W.2d at 277; McKinney v. Pioneer Life. Ins. Co., 465 N.W.2d at 194. It has been early and universally recognized that although actual authority and apparent authority exist as two different theories of vicarious liability, they both may serve to define scope of employment. See William L. Prosser, Handbook of the Law of Torts 473 (3rd Ed. 1964); see also Faragher, 66 U.S.L.W. at 4649 (citing Seavey, Speculations as to "Respondeat Superior," in Studies in Agency 129, 155 (1949) ("The liability of a master to a third person for the torts of a servant has been widely extended by aid of the elastic phrase 'scope of the employment' which may be used to include all which the court wishes to put into it.")).

The dissent also overlooks that South Dakota law has recognized that the distinction between actual authority and apparent authority simply pertains to the manner in which an agent obtains authority. See Federal Land Bank of Omaha v. Sullivan, 430 N.W.2d 700, 701 (S.D. 1988). "Actual authority is created by manifestations from the principal to the agent, . . . while ostensible [or apparent] authority is created when the principal allows a third person to believe the agent has authority to act on the principal's behalf." Id. (citations omitted).

"[I]n the measurement of its effects, authority is authority and the operation of apparent authority is of no lesser degree of effectiveness than is the operation of real

-9-

LOKEN, Circuit Judge, dissenting.

I respectfully dissent for two independent reasons.

1. The Federal Tort Claims Act (FTCA) allows claims:

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] *while acting within the scope of his office or employment*, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

FDIC v. Meyer, 510 U.S. 471, 477 (1994) (emphasis added). The Act does not make the government liable to the full extent of a private employer's vicarious liability under state law. Rather, the United States is liable only if its employee was acting "within the scope of his office or employment." 28 U.S.C. §§ 1346(b)(1), 2672; see Piper v. United States, 887 F.2d 861, 863 (8th Cir. 1989). As the Supreme Court has said, "'Scope of employment' sets the line." Gutierrez de Martinez v. Lamagno, 515 U.S.

---

authority." See Harold Gill Reuschlein & William A. Gregory, Handbook on the Law of Agency and Partnership 58 (1979). Where apparent authority exists, the third person has the same rights with reference to the principal as where actual authority exists. See Restatement § 8 cmt. a.

The idea that a law enforcement officer's actions were intentional and thereby outside the scope of employment has been previously rejected by this court, see Red Elk, 62 F.3d 1102 (applying South Dakota law under the FTCA), and other courts. See, e.g., Mary M. v. City of Los Angeles, 54 Cal. 3d 202, 216-221, 814 P.2d 1341, 1349-1352 (Cal. 1991).

-10-

417, 423 (1995).[11]  The FTCA is a limited waiver of the government's sovereign immunity.  We have no jurisdiction to impose FTCA liability for the acts of government employees outside the scope of their employment.  Meyer, 510 U.S. at 475.

In our prior decision, we remanded "for reconsideration of [the district court's] factual findings with application of South Dakota law relating to apparent authority." Primeaux v. United States, 102 F.3d 1458, 1463 (8th Cir. 1996).  Our opinion noted that Leafgreen v. American Family Mut. Ins. Co., 393 N.W.2d 275 (S.D. 1986), had discussed apparent authority as it relates to agent frauds, and we quoted Restatement (Second) of Agency § 219(2)(d), which relates more generally to agent wrongdoing:

> (2) A master is not subject to liability for the torts of his servants *acting outside the scope of their employment*, unless:
>
>  (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

102 F.3d at 1462 (emphasis added).  In other words, we invoked that portion of South Dakota law which authorizes the imposition of vicarious liability on private employers for acts of their agents that are within their apparent authority but outside the scope of their employment.  Now, the case has returned, once again with a district court finding that Tribal Officer Scott was acting outside the scope of his employment.  The court again reverses, declaring that the United States is liable because, from Primeaux's perspective, Scott was acting within his apparent authority as defined in the Restatement.  This ruling goes beyond the government's waiver of sovereign immunity.

---

[11]Because Primeaux did not assert claims against Scott personally, the Attorney General made no determination under 28 U.S.C. § 2679(d)(1) regarding the scope of employment issue.

Scope of employment and apparent authority are two different theories of vicarious liability. See Commerford v. Olson, 794 F.2d 1319, 1321 (8th Cir. 1986). Neither Leafgreen nor McKinney v. Pioneer Life Ins. Co., 465 N.W.2d 192, 194 (S.D. 1991), supports the court's assertion that all acts done with apparent authority are within an employee's scope of employment under South Dakota law. The foreseeability of the employee's misconduct from the employer's perspective is critical to the scope of employment issue under South Dakota law, whereas apparent authority focuses on the employee's misconduct from the victim's perspective. As § 219(2)(d) of the Restatement expressly recognizes, apparent authority is a doctrine under which an employer may become liable for torts committed by employees acting *outside* the scope of their employment.

State law may of course extend a private employer's vicarious liability to include acts within an employee's apparent authority but not within the scope of employment. But FTCA liability requires proof that Scott's actions were within the scope of his employment as a tribal officer. Under South Dakota law, scope of employment is an issue of fact. See Deuchar v. Foland Ranch, Inc., 410 N.W.2d 177, 181-82 (S.D. 1987). The district court found that Scott was not acting within the scope of his employment. That finding is not clearly erroneous. Scott was off duty, not in uniform, and outside his jurisdiction. Primeaux was out of her car, "walking toward the nearest town of Martin," when Scott "stopped to ask her if she wanted a ride." Primeaux, 102 F.3d at 1460. He offered her a ride, the kind of assistance any citizen might offer late on a cold November night. Primeaux accepted the offer because she wanted a ride. Scott's subsequent sexual assault was by no stretch of the imagination a foreseeable event within the scope of his employment. See Bates v. United States, 701 F.2d 737, 742 (8th Cir. 1983) (military policeman's on-duty murder and rape of four civilians following purported stop not within scope of government employment); Leafgreen, 393 N.W.2d at 281 (judgment for employer affirmed because "there was not such a connection between [the agent's] employment . . . and the burglary which actually caused the harm . . . as to make the harm foreseeable").

2. The FTCA does not apply to "[a]ny claim arising out of assault, battery," and other enumerated intentional torts. 28 U.S.C. § 2680(h). Rape and other sexual assaults are within the classes of intentional torts excepted from the FTCA by § 2680(h). See Garcia v. United States, 776 F.2d 116, 118 (5th Cir. 1985); Doe v. United States, 838 F.2d 220, 226 (7th Cir. 1988) (Manion, J., dissenting, and cases cited). Thus, the intentional tort committed by Tribal Officer Scott is not within the customary parameters of the FTCA.

The exception in § 2680(h) is subject to a proviso:

> *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

Though Tribal Officer Scott is no doubt a law enforcement officer for purposes of § 2680(h), the proviso only applies to intentional torts committed by such officers "while executing a search, seizing evidence, or making an arrest." Pooler v. United States, 787 F.2d 868, 872 (3d Cir.), cert. denied, 479 U.S. 849 (1986); accord Cole v. United States, 874 F. Supp. 1011, 1046 (D. Neb. 1995); Employers Ins. v. United States, 815 F. Supp. 255, 258 (N.D. Ill. 1993); Beran v. United States, 759 F. Supp. 886, 892 (D.D.C. 1991); Rourke v. United States, 744 F. Supp. 100, 103 (E.D. Pa. 1988), aff'd, 909 F.2d 1477 (3d Cir. 1990). Contra Harris v. United States, 677 F. Supp. 403, 406 (W.D.N.C. 1988); Crow v. United States, 659 F. Supp. 556, 570 (D. Kan. 1987). Scott was not engaged in those kinds of activities at the time in question, so the proviso to § 2680(h) is inapplicable.

-13-

Most cases construing § 2680(h) have involved the question whether the United States may be liable for negligent acts that somehow facilitated or contributed to intentionally tortious wrongdoing that otherwise falls within the exception.  See, e.g., Sheridan v. United States, 487 U.S. 392 (1988).  In this case, only intentional tort claims are asserted.  Accordingly, those claims are barred by § 2680(h).  Red Elk v. United States, 62 F.3d 1102 (8th Cir. 1995), is not precedent for ignoring the limit on the government's waiver of sovereign immunity set forth in § 2680(h).  Our opinion in Red Elk never mentions § 2680(h), no doubt because the tribal officers in Red Elk raped the victim after arresting her for a curfew violation, which likely made the proviso to § 2680(h) applicable.  Indeed, it is not clear from that opinion whether the government was held liable for its agents' intentional torts or the government's negligent failure to train and supervise those agents.

For both of the foregoing reasons, I would affirm.


A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-