**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1319
_____

STANLEY BAER: JESSE L. COHEN; ALAN ROTH;
ELAINE RUTH SCHAFFER; LENORE H. SCHUPAK,
                                                          Appellants

v.

THE UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District Of New Jersey
(District Court No. 2-11-cv-01277)
District Judge: Hon. Stanley R. Chesler
_____

Argued February 12, 2013

Before: HARDIMAN and ALDISERT, Circuit Judges, and
STARK,[*] District Judge.

(Filed: July 1, 2013)

Helen D. Chaitman [Argued]
Becker & Poliakoff
45 Broadway, 8th Floor
New York, New York 10006
          Attorney for the Appellants

Stuart F. Delery
Paul J. Fishman
Mark B. Stern
Lindsey Powell [Argued]
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
          Attorneys for the Appellee

_____

OPINION OF THE COURT
_____

_____

[*]Honorable Leonard P. Stark, Judge of the United States
District Court for the District of Delaware, sitting by
designation.

STARK, <u>District Judge</u>.

This case arises from the well-known Ponzi scheme operated by Bernard L. Madoff. Plaintiffs-Appellants Stanley Baer, Jesse L. Cohen, Alan Roth, Elaine Ruth Schaffer, and Lenore H. Schupak ("Appellants") were customers of Bernard L. Madoff Investment Securities LLC ("BLMIS"). On March 7, 2011, Appellants brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"), to recover damages for injuries resulting from the failure of the Securities and Exchange Commission ("SEC") to uncover and terminate Madoff's Ponzi scheme in a timely manner. The District Court for the District of New Jersey dismissed the complaint based on lack of subject matter jurisdiction, finding that Appellants' claims were barred by the discretionary function exception ("DFE") to the FTCA. <u>See</u> 28 U.S.C. § 2680(a). The District Court also denied Appellants' requests for jurisdictional discovery and to amend the complaint. We will affirm.

I

As this is an appeal from the District Court's grant of a motion to dismiss, we, like the District Court, accept the well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to Appellants. <u>See</u> <u>Lora-Pena v. FBI</u>, 529 F.3d 503, 505 (3d Cir. 2008) (per curiam). The allegations contained in Appellants' complaint are derived substantially from a 457-page report prepared by the SEC's Office of Investigations (the "OIG Report"), which describes in detail the SEC's failed multi-year investigation of Madoff's Ponzi scheme:

> The OIG investigation found that the SEC received numerous substantive complaints since 1992 that raised significant red flags concerning Madoff's hedge fund operations and should have led to questions about whether Madoff was actually engaged in trading and should have led to a thorough examination and/or investigation of the possibility that Madoff was operating a Ponzi scheme. However, the OIG found that although the SEC conducted five examinations and investigations of Madoff based upon these substantive complaints, they never took the necessary and basic steps to determine if Madoff was misrepresenting his trading. [The OIG] also found that had these efforts been made with appropriate follow-up, the SEC could have uncovered the Ponzi scheme well before Madoff confessed.

(OIG Report at 456).[1]

---

[1]More thorough descriptions of Madoff's operations and the SEC's investigations of them are set forth in numerous recent decisions of other courts and need not be repeated here. See,

4

Appellants contend that had the SEC investigated BLMIS with even the most basic level of competence, Madoff's scheme would have been discovered and Appellants' losses would have been prevented. Their complaint alleges three causes of action under the FTCA: (1) that the SEC was negligent in its investigations of BLMIS; (2) that the SEC aided and abetted breaches of fiduciary duty committed by BLMIS; and (3) that the SEC aided and abetted the fraud perpetrated by BLMIS.[2] The government moved to dismiss for lack of jurisdiction, contending that the alleged misconduct fell within the discretionary function exception to the FTCA. The District Court agreed with the government and dismissed the complaint. The District Court also denied Appellants' motions seeking jurisdictional discovery and leave to amend the complaint. Appellants timely appealed.

## II

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We "exercise plenary review over application of the

---

e.g., In re Bernard L. Madoff Inv. Sec. LLC, 424 B.R. 122, 126-32 (Bankr. S.D.N.Y. 2010); Dichter-Mad Family Partners, LLP v. United States, 707 F. Supp. 2d 1016, 1020-24 (C.D. Cal. 2010), aff'd, 709 F.3d 749 (9th Cir. 2013) (per curiam).

[2] Although Appellants contend that the District Court erred by not differentiating among their three causes of action, Appellants do not explain why these causes of action, which are based on the same set of operative facts, should be analyzed separately. Indeed, Appellants' opening and reply briefs do not distinguish among the three causes of action.

5

FTCA's discretionary function exception." Merando v. United States, 517 F.3d 160, 163-64 (3d Cir. 2008). "Questions of subject matter jurisdiction raised on a motion to dismiss under Rule 12(b)(1) are also reviewed *de novo*." Free Speech Coal., Inc. v. Att'y Gen., 677 F.3d 519, 530 (3d Cir. 2012).

Appellants "bear[] the burden of demonstrating that [their] claims fall within the scope of the FTCA's waiver of government immunity," while the government "has the burden of proving the applicability of the discretionary function exception." Merando, 517 F.3d at 164 (internal quotation marks omitted). As we explain, the District Court correctly concluded that it lacked subject matter jurisdiction.

## III

The FTCA waives the federal government's sovereign immunity with respect to tort claims for money damages. See 28 U.S.C. § 1346(b)(1). The discretionary function exception limits that waiver, eliminating jurisdiction for claims based upon the exercise of a discretionary function on the part of an employee of the government. See 28 U.S.C. § 2680(a). Specifically, pursuant to the DFE, the government retains sovereign immunity with respect to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. In this way, the discretionary function exception draws a "boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. Varig Airlines, 467 U.S. 797, 808 (1984). Congress

6

enacted the DFE to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 814.

To determine whether the DFE applies, courts employ a two-part test. First, a court must "consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536 (1988). Second, a court must determine whether the judgment exercised "is of the kind that the discretionary function exception was designed to shield." Id. This is because the DFE "protects only governmental actions and decisions based on considerations of public policy." Id. at 537. Notably, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." United States v. Gaubert, 499 U.S. 315, 324 (1991).

IV

Appellants contend that the SEC is not protected from liability under the DFE because neither part of the two-part test is satisfied here. In particular, Appellants argue that the SEC conduct challenged by their complaint violated numerous mandatory, non-discretionary statutes and regulations. Appellants further assert that any discretion exercised by the SEC is not susceptible to policy analysis.

In most respects, Appellants' arguments repeat those uniformly rejected by other courts that have considered suits against the SEC brought by victims of the Madoff Ponzi scheme. After briefly describing how we reach the same conclusions as these other courts on the overlapping issues, we focus on the two bases on which Appellants seek to distinguish their complaint.

A

Appellants contend that the SEC violated several mandatory internal procedures during the BLMIS investigation by: (1) failing to obtain trading verifications; (2) failing to commence investigations promptly; (3) failing to draft closing reports; and (4) failing to log investigations into the SEC's examination tracking system. Appellants have not demonstrated, however, that the procedures on which they rely are anything more than discretionary guidelines for SEC personnel.

For example, although Appellants argue that "[t]rading verifications *must be* obtained from third parties," such as the National Association of Securities Dealers (App. Br. at 30) (emphasis added), they cite no source for such a mandatory duty. To the contrary, the OIG Report – which forms the basis for Appellants' complaint – states that "verifying trading activity from an independent source *was not an 'essential' part* of a Ponzi scheme investigation." (OIG Report at 325) (emphasis added). Likewise, Appellants contend in their briefing that "[i]nvestigations *must be* commenced promptly and MUIs [(Matters Under Inquiry)] *must be* opened at the beginning of the investigation" (App. Br. at 30) (emphasis added), but they ground this assertion in no regulation, and even their complaint only alleges that

8

"MUI's *should* be opened promptly," that is within "days, hours, [or] weeks" (A49 ¶ 61, A64 ¶ 129) (emphasis added). Appellants' contention that SEC employees "*must* draft closing reports at the end of investigations" (App. Br. at 30) (emphasis added) is belied by the portion of the OIG Report on which they rely, which states, instead, that preparing "a closing report at the conclusion of an examination is 'good practice'" (OIG Report at 136). Similarly, although Appellants allege that "[i]nvestigations *must* be logged into the SEC's STARS tracking system" (App. Br. at 30) (emphasis added), they base this assertion on 15 U.S.C. § 78q(k),[3] which provides that the "Commission and the examining authorities . . . shall eliminate any *unnecessary* and *burdensome* duplication" and "shall share such information . . . *as appropriate* to foster a coordinated approach" (emphasis added). As the emphasized statutory language illustrates, an element of discretion is involved in determining what investigative material is to be logged into the STARS tracking system. (See also OIG Report at 133) ("Again, there was *no rule or policy about it*, but I think the information-sharing at that level between offices was not always great.") (emphasis added).

Hence, we agree with the District Court, as well as the other federal courts that have considered these issues, and conclude that Appellants have failed to identify any violation of a mandatory policy or guideline by any SEC employee. See Donahue v. United States, 870 F. Supp. 2d 97, 103-14 (D.D.C. 2012); Molchatsky v. United States, 778 F. Supp. 2d 421, 431-34 (S.D.N.Y. 2011), aff'd, 713 F.3d 159 (2d Cir.

---

[3]In 2010, section 78q(k) was re-designated as section 78q(j).

2013); <u>Dichter-Mad</u>, 707 F. Supp. 2d at 1035-51, <u>aff'd</u>, 709 F.3d 749.

B

Appellants' principal argument for an outcome different from that in all of the similar lawsuits to date is that Appellants, unlike other victims, allege the SEC had no discretion to favor Madoff, "a Wall Street bigwig," and for this reason the SEC's conduct is not protected by the DFE. Appellants cite to four SEC regulations as the bases for a mandatory duty that the SEC not accord preferential treatment to anyone, including someone of Madoff's former stature. <u>See</u> 5 C.F.R. § 2635.101(b)(8); 17 C.F.R. § 200.64; 17 C.F.R. § 200.61; 17 C.F.R. § 200.735-2(a). For example, 5 C.F.R. § 2635.101(b)(8) provides: "Employees shall act impartially and not give preferential treatment to any private organization or individual."

The problem for Appellants is that the regulations on which they rely are inherently intertwined with the SEC's *discretionary* authority to determine the timing, manner, and scope of SEC investigations. <u>See, e.g.</u>, <u>Gen. Pub. Utils. Corp. v. United States</u>, 745 F.2d 239, 245 (3d Cir. 1984) ("The extent and scope of an investigation remains a matter of the agency's discretion."); <u>Vickers v. United States</u>, 228 F.3d 944, 951 (9th Cir. 2000) ("[The] discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the agency does not violate a mandatory directive."). As set out in statute, the SEC:

> may, *in its discretion*, make such
> investigations as it deems

necessary to determine whether any person has violated, is violating, or is about to violate any provision of this chapter . . . . The Commission *is authorized in its discretion . . .* to investigate *any facts, conditions, practices, or matters which it may deem necessary or proper* to aid in the enforcement of such provisions.

15 U.S.C. § 78u(a)(1) (emphasis added). SEC regulations likewise reflect that the SEC's investigative authority is discretionary:

The Commission may, *in its discretion*, make such formal investigations and authorize the use of process *as it deems necessary* to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or the rules of a self-regulatory organization of which the person is a member or participant.

17 C.F.R. § 202.5(a) (emphasis added).

That Appellants are, in essence, challenging discretionary decisions relating to the timing, manner, and scope of SEC investigations is evident from Appellants' specific allegations as to how the SEC violated its purportedly

11

mandatory duty of non-preferential treatment. Appellants allege that the SEC discouraged junior examiners from questioning Madoff's responses to SEC inquiries, failed to scrutinize evidence provided by Madoff, delayed the Madoff investigation, and reassigned examiners who raised concerns with respect to the investigation. All of these actions involve government actors' exercise of judgment and choice of the kind the discretionary function was designed to shield. See generally Varig, 467 U.S. at 809-10 ("[The DFE is] designed to preclude application of the [FTCA] to a claim based upon an alleged abuse of discretionary authority by a regulatory or licensing agency – for example, the Federal Trade Commission, the Securities and Exchange Commission, the Foreign Funds Control Office of the Treasury, or others. It is neither desirable nor intended that the constitutionality of legislation, the legality of regulations, or the propriety of a discretionary administrative act should be tested through the medium of a damage suit for tort.") (citing H.R. Rep. No. 77-2245, at 10) (1942) (internal quotation marks omitted); United States v. Pooler, 787 F.2d 868, 871 (3d Cir. 1986) ("[W]hen the sole complaint is addressed, as here, to the quality of the investigation as judged by its outcome, the discretionary function [exception] should, and we hold, does apply. Congress did not intend to provide for judicial review of the quality of investigative efforts."), abrogated on other grounds by Millbrook v. United States, 133 S. Ct. 1441 (Mar. 27, 2013).[4]

---

[4]Appellants' reliance on cases such as Fair v. United States, 234 F.2d 288 (5th Cir. 1956), is unhelpful, as these involve plaintiffs challenging government actions that created reliance interests for specific individuals, as opposed to "only

The regulations identified by Appellants also do not prescribe any particular course of action for the SEC to follow. See Berkovitz, 486 U.S. at 536. At most, these regulations attempt to limit the scope of discretion afforded the SEC during the course of an investigation. While a violation of these regulations may amount to an abuse of discretion, that is not sufficient to waive the federal government's sovereign immunity, as the discretionary function exception applies "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

Additionally, because SEC regulations afford examiners discretion regarding the timing, manner, and scope of investigations, there is a strong presumption that the SEC's conduct is susceptible to policy analysis. See Gaubert, 499 U.S. at 324. Appellants' attempt to rebut this presumption by alleging an SEC intent to protect a "Wall Street bigwig" is unavailing. "The focus of the inquiry is *not on the agent's subjective intent* in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325 (emphasis added). Whether to pursue a lead, to request a document, or to assign additional examiners to an investigation are all discretionary decisions, which necessarily involve considerations of, among other things, resource allocation and opportunity costs. See generally Bd. of Trade v. SEC, 883 F.2d 525, 531 (7th Cir. 1989) ("Courts cannot intelligently supervise the Commission's allocation of its staff's time, because although judges see clearly the claim

---

an activity designed to be protective of the interest of that amorphous group known as the public as a whole," id. at 293, as is the case here.

the Commission has declined to redress, they do not see at all the tasks the staff may accomplish with the time released."). The discretionary function exception immunizes the government from a lawsuit based on such discretionary judgments.[5]

Moreover, were we to agree that a preferential treatment allegation is sufficient to overcome application of the discretionary function exception, we would effectively eliminate the discretionary function exception for SEC investigations. Any investigative decision by the SEC could potentially be challenged by someone as the product of favoritism or discrimination. A plaintiff should not be permitted to overcome application of the DFE through creative pleading. See Fisher Bros. Sales v. United States, 46 F.3d 279, 286 (3d Cir. 1995) (en banc); see also Molchatsky, 713 F.3d at 162 ("The DFE is not about fairness, it 'is about power'; the sovereign 'reserve[s] to itself the right to act without liability for misjudgment and carelessness in the formulation of policy.'") (quoting Nat'l Union Fire Ins. v. United States, 115 F.3d 1415, 1422 (9th Cir. 1997)).

C

Appellants' other basis for distinguishing this case is the allegation that the SEC does not have discretion to commit misprision of felony. According to Appellants, if the SEC had conducted a proper investigation, it would have discovered Madoff's fraudulent scheme and, once discovered, it would have acquired a mandatory duty to disclose the fraud

---

[5]Appellants' characterization of the SEC's failings as being due to "laziness" does nothing to alter our analysis.

14

to the public, regardless of whether the SEC made a discretionary decision to pursue an enforcement proceeding.

Appellants rely on 18 U.S.C. § 4, the federal misprision of felony statute, which provides:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

The elements of misprision of felony are: "(1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime." United States v. Gebbie, 294 F.3d 540, 544 (3d Cir. 2002).

There is no dispute that Madoff committed a felony. However, none of the remaining elements of misprision of felony is present here. Most importantly, the SEC did not have "full knowledge" of Madoff's fraud. Indeed, the complaint alleges that "the SEC failed to take the most basic investigatory steps that *would have uncovered* and put an immediate end to Madoff's fraud." (A35 ¶ 6(a)) (emphasis added). Accepting this allegation as true, the SEC necessarily lacked full knowledge of Madoff's criminal conduct.

15

Lacking such knowledge, the SEC also could not have failed to notify authorities nor taken steps to conceal Madoff's crime. For at least these reasons, Appellants' contentions regarding misprision of felony do not create subject matter jurisdiction for their claims.

V

Appellants also challenge the District Court's discretionary decisions to deny them jurisdictional discovery and leave to file an amended complaint.

A

We review a district court's denial of jurisdictional discovery for abuse of discretion. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003). Here, the District Court did not abuse its discretion when it denied Appellants' request to conduct discovery regarding the existence of additional SEC internal procedures. Appellants had and relied on the SEC's detailed 457-page OIG Report, which includes a discussion of numerous SEC procedures and policies. The SEC subsequently issued a follow-up report that examines the Office of Compliance Inspections and Examinations' "modules, policies, procedures and guidance associated with the conduct of its examinations." SEC OIG Rpt. No. 468, Review and Analysis of OCIE Examinations of Bernard L. Madoff Investment Securities, LLC, at 2 (Sept. 29, 2009). The SEC's Enforcement Manual is available online. Despite these materials, Appellants have been unable to identify any regulation, policy, or procedure that would overcome application of the discretionary function exception. Appellants cannot establish a "reasonable expectation that

16

discovery will reveal evidence of" any such policy.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

B

Appellants contend that the District Court improperly denied their request to amend the complaint to include allegations that: (1) the SEC knowingly destroyed records from the Madoff investigations in violation of federal law; and (2) certain SEC employees involved in the Madoff investigations were subject to internal discipline.  We review a district court's denial of a motion to amend a pleading for abuse of discretion.  See Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011).  Again, we find no abuse of discretion.

Appellants' allegation of improper document destruction is not relevant to the claims at issue.  Indeed, Appellants' proposed amended complaint does not add any separate cause of action based on the improper destruction of documents.  The addition of allegations that documents were improperly destroyed would not take Appellants' claims outside the application of the discretionary function exception.  Likewise, the allegation that disciplinary proceedings have been brought against certain SEC examiners does not help Appellants establish that any SEC employee violated a mandatory policy, and, thus, does not allow Appellants to overcome application of the DFE.

VI

Accordingly, we will affirm the judgment of the District Court.

17