[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12776

_____

D.C. Docket No: 8:10-cr-00298-JSM-MAP-1

UNITED STATES OF AMERICA,

Plaintiff -Appellee,

versus

COURTNEE NICOLE BRANTLEY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 9, 2015)

Before MARTIN and ROSENBAUM, Circuit Judges, and PROCTOR,[*] District
Judge.

_____

[*] Honorable R. David Proctor, United States District Judge for the Northern District of Alabama,
sitting by designation.

PROCTOR, District Judge:

This appeal involves an infrequently charged crime: misprision of a felony in violation of 18 U.S.C. § 4. Courtnee Nicole Brantley was convicted of misprision as a result of her actions during and following a traffic stop on June 29, 2010. Brantley raises several challenges to her conviction. She argues that she was the subject of selective prosecution, the prosecution violated her Fifth Amendment privilege against self-incrimination, and there was insufficient evidence to support the verdict against her. After careful review and with the benefit of oral argument, we disagree. For the reasons stated below, we affirm Brantley's conviction.

## I. BACKGROUND

The misprision charge brought against Brantley stems from tragic events that occurred on June 29, 2010. Brantley was pulled over in a routine traffic stop. Brantley's boyfriend, convicted felon Dontae Morris, was a passenger in her car. Upon questioning by the police, he emerged from the car and shot and killed two officers. He then fled on foot as Brantley sped away. Within minutes, Brantley spoke with Morris on a cell phone, and thereafter hid the car and exchanged texts with Morris. The traffic stop itself -- including the shootings -- was recorded by the dashboard video camera in a police car. The video was played for the jury.

2

At trial, the jury ultimately found that Brantley knew about a federal felony (her convicted-felon boyfriend's possession of the firearm which he used to shoot the officers), did not report that crime to the authorities, and, in the aftermath of the murders, took affirmative steps to conceal Morris's felony from the authorities.

## II.  SUMMARY OF RELEVANT FACTS

At about 2:13 a.m. on June 29, 2010, Tampa Police Officer David Curtis pulled over Brantley's car because it did not have a license tag.  Brantley provided her driver's license and vehicle documentation, and Officer Curtis discussed the tag violation with her. Officer Curtis also questioned Morris, who gave Curtis his name and birthdate. Officer Curtis entered Morris's information into his patrol car's computer.  An outstanding warrant came up, along with a warning that Morris had previously resisted arrest.

A backup officer, Jeffrey Kocab, arrived on the scene, and both officers approached the passenger side of Brantley's car. Officer Curtis told Morris to step out of the car.  As he exited the car, Morris pulled a gun and shot Officers Curtis and Kocab in the head.  Both officers died from their wounds.  Morris ran in one direction, and Brantley drove off in another.  The entire traffic stop -- including the shootings -- was captured by the dashboard video camera in Officer Curtis's vehicle.

Within a minute of the shootings, Brantley called Morris. Two more phone calls between them soon followed. Brantley drove to an apartment complex located about three miles from the murder scene.  Therefore, the calls between Brantley and Morris necessarily occurred prior to the time Brantley parked the car.[1] Brantley parked the car a distance from the apartment in which she hid.  When Brantley parked, she backed the car into a space (and up against some bushes) in order to conceal the missing license tag.

Following their phone conversations, and within minutes after the shootings, Brantley and Morris had the following exchange of text messages:

Morris: "Your ride dont need 2 be park by the spot neither."

Brantley: "No. Still n here, bt way round corner. I nd to move it sumwhere else tho."

Morris: "Just lean bak til 2morrow. you phone in your name."

Brantley: "No."

Morris: "Bet im bout 2 turn my shiit off til 2morrow i love you."

Brantley: "I love u with my last breath."

Morris: "Yea just lean bak stay loyal."

Brantley: "Of course… Til death do us part."

Brantley's texts all included the tagline: "ON MY OWN LEVEL."

---

[1] Driving at 60 miles per hour, one would drive one mile every minute.

4

A few minutes later, Brantley sent text messages to several other people: "U havent seen me….. U dont know where im at….. Please dont tell anyone anything. Erase these messages!" When one of those people questioned her, Brantley explained, "Just make like I never exisisted!"

The police eventually located Brantley in an apartment some 500 yards and across a lake from where she had parked her car. During questioning, Brantley admitted that she had been pulled over, someone had been injured, and she had fled the scene. She further admitted that she had a passenger in the car, but refused to disclose Morris's last name.

Morris was arrested after three days, and was prosecuted by the State of Florida for the two murders. Brantley went to trial on the misprision of a felony charge.[2] After the Government put on its case, Brantley rested without presenting any evidence. The case then went to the jury.

The jury was instructed that, in order for Brantley to be found guilty of misprision, it must find "that a federal felony as charged in Count I of the Indictment was committed[,] that the defendant had actual knowledge of the commission of the felony[,] that the defendant did not as soon as possible make known the felony to some judge or other person in civil or military authority[, and]

---

[2] This was Brantley's second trial. In the first trial, the jury was unable to reach a unanimous verdict.

5

that the defendant did an affirmative act to conceal the crime." The court further instructed that, in the event the jury found Brantley guilty, it should disclose the acts of concealment that it found she had committed. ("there's blanks for you to write in whatever act or acts you find"). Consistent with the trial court's instruction, the verdict form directed the jury (in the event it found Brantley guilty) to "describe the act or acts you find Brantley committed to conceal the crime of felon in possession of [a] firearm and ammunition."

The jury returned a verdict of guilty against Brantley on the misprision charge. In response to the special jury interrogatory, the jury explained that it found evidence of the following acts: "The defendant knowingly and willfully concealed her knowledge of the possession of a firearm and ammunition by a convicted felon from the authorities by coordinating via phone calls and text messages with Dantae [sic] Morris." After return of the verdict, the district court gave the jury the opportunity to be more specific as to the "acts of concealment" it found. The jury declined to supplement or alter its verdict.

### III. STANDARD OF REVIEW

"[I]n reviewing the denial of a motion to dismiss for selective prosecution, we review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir. 2011) (citing United States v. Smith, 231 F.3d 800, 806 (11th Cir. 2000)).

We also review the district court's application of the Fifth Amendment privilege de novo.  United States v. Hernandez, 141 F.3d 1042, 1049 (11th Cir. 1998).

We review de novo a verdict challenged for sufficiency of the evidence, "resolving all reasonable inferences in favor of the verdict."  United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010). If there is a reasonable basis in the record for the verdict, we must sustain it.  Id.

## IV.  DISCUSSION

Brantley presents the following arguments on appeal: (1) the district court should have dismissed the charge against her because she was selectively prosecuted; (2) the prosecution violated her Fifth Amendment privilege against self-incrimination; and (3) the district court should have ordered a judgment of acquittal or a new trial because there was insufficient evidence to support the jury's verdict.  We address each of these arguments below, but find they lack merit.

### A.     Brantley Did Not Establish that Her Prosecution was Improperly Selective

It is axiomatic that with limited law enforcement resources, the Government is unable to prosecute every crime that is committed. Decisions regarding which crimes will be prosecuted are entrusted by the United States Constitution to the Executive Branch, which is charged with seeing that our nation's laws are enforced.  See U.S. Const., Art. II, § 3 ("he shall take Care that the Laws be

7

faithfully executed"). "The judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution." Smith, 231 F.3d at 807. "[U]nder the Due Process Clause of the Fifth Amendment, 'the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification.'" Jordan, 635 F.3d at 1188 (quoting Smith, 231 F.3d at 807). However, a presumption exists that a prosecutor has not violated equal protection principles, and a defendant challenging her conviction on this ground must satisfy a "demanding" burden to establish that she is being selectively prosecuted. Id.; Smith, 231 F.3d at 807. In order to overcome that presumption, a defendant must present clear evidence of a selective prosecution. Smith, 231 F.3d at 807.

A defendant asserting that she was selectively prosecuted must show "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." Jordan, 635 F.3d at 1188 (quoting Smith, 231 F.3d at 808). In other words, a criminal defendant who claims she was subjected to selective prosecution must establish two elements: (1) the discriminatory effect prong of this test requires a showing that "similarly situated individuals were not prosecuted" (id. (quoting Smith, 231 F.3d at 809)), and (2) "[t]he discriminatory purpose prong requires that the decisionmaker selected or

8

reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group" (id. (quoting Wayte v. United States, 470 U.S. 598, 610 (1985) (internal quotation marks omitted))). "Further, in order to obtain an evidentiary hearing on a selective prosecution claim, 'the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution.'" Id. (quoting United States v. Silien, 825 F.2d 320, 322 (11th Cir. 1987)).

Here, the District Court concluded that it was "unnecessary to discuss whether [Brantley]…met the first prong since she has clearly failed to meet the second." We agree that Brantley failed to establish the second element but we also conclude, based upon the record evidence before us, that she did not satisfy the first element either.

### 1.    Brantley Has Not Shown That She is Similarly Situated to Her Purported Comparator.

Based upon our rule pronounced in Jordan, it was incumbent upon Brantley to show by clear evidence that a similarly situated individual was not prosecuted for misprision. As we have explained, "a 'similarly situated' person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the

Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." Smith, 231 F.3d at 810. In a different context -- when a Title VII plaintiff complains she was treated differently than a similarly situated co-worker -- we have required the plaintiff and the employee she identifies as a comparator to be similarly situated "in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997). As we have explained, the comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer. Wilson, 376 F.3d at 1091; see Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001). The same considerations apply in a challenge based upon selective prosecution because, in all but an exceedingly narrow number of cases, a court is not free to second-guess the prosecutor's exercise of charging discretion. Thus, applying the Smith rationale to the record evidence, we conclude Brantley's contention that she is similarly situated to McMillan is off the mark.

In pressing her selective prosecution claim, Brantley has identified a single comparator – Quinisha McMillan. Brantley alleged the following facts related to McMillan:  (1) McMillan never properly reported to law enforcement information

10

about the murder of a civilian;[3] (2) the same homicide detective who interviewed Brantley in relation to Morris's shooting of Officers Curtis and Kocab also spoke (some two weeks later) with McMillan about Morris allegedly murdering a civilian; (3) McMillan acknowledged hosting Morris in her home after the civilian was shot; (4) McMillan saw Morris in possession of a firearm; and (5) Morris and others indicated to McMillan that it was Morris who killed the civilian.

But there were also significant differences between Brantley and McMillan in relation to their knowledge of the two cases and their respective silence about Morris's conduct. Indeed, three examples of these differences are readily apparent in the record before us. First, McMillan was not actually present at the time that Morris used the firearm he unlawfully possessed to commit a second felony— namely, murder; conversely, Brantley was at the scene with Morris when he murdered the two officers. Second, McMillan was warned by Morris about the consequences of snitching and that warning was punctuated by threats and a physical beating (at the hands of Morris and two of his acquaintances); however, Brantley, without threat or intimidation, pledged to stay loyal to Morris "[t]il death do us part." Finally, Morris's possession of a firearm in McMillan's presence, which McMillan failed to report, occurred at a time which was separate from and

---

[3] McMillan did not report Morris's possession of a firearm (and purported involvement in the murder of a civilian) until long after the crime occurred. It was not until substantially later that McMillan gave sworn testimony to that effect in a separate case in which Morris was prosecuted for murder of a civilian.

11

clearly <u>after</u> Morris allegedly used that firearm to commit the second crime of murder; on the other hand, Brantley was aware, but failed to report, that Morris was in possession of a firearm <u>at the very time</u> that he shot and killed two police officers. These important differences between Brantley and McMillan provide sufficient reason, in and of themselves, for us to determine that the two are not truly comparators and the prosecution had legitimate reasons for viewing them differently. But, here, there is even more.

As the jury determined beyond a reasonable doubt, Brantley not only failed to disclose Morris's crime, but also took affirmative steps to conceal it. In fact, the jury found that Brantley knowingly and willfully concealed her knowledge of Morris's crime "by coordinating via phone calls and text message with [him]." The evidence adduced at trial amply supports the jury's finding. On the other hand, and as the district court found, Brantley has not alleged that McMillan committed any act of concealment. We also note that Morris's possession of a firearm in this case led to the killing of two police officers.[4]

Of course, all murders are tragic and senseless. But the government's choice to prosecute crimes associated with the killing of police officers differently than

---

[4] In the district court, Brantley complained that McMillan was not prosecuted for misprision because the civilian who Morris allegedly murdered "was not a police officer, and the [civilian's] tragic death did not rise to the level of public outrage and associated pressures surrounding the deaths of two police officers …." Similarly, Brantley contended that McMillan was not prosecuted because Morris's purported murder of the civilian did not "reach beyond ordinary citizens and into the ranks of law enforcement."

those associated with the killing of civilians is a permissible exercise of prosecutorial discretion.  As we explain below, that decision is not based on any protected classification.  Moreover, prosecution of crimes against police officers serves unique deterrent interests.

Here, there is a substantial question whether McMillan violated the misprision statute.  But even if she did, Brantley has failed to establish that she and McMillan are similarly situated.  She is simply not properly viewed as Brantley's comparator.

**2.      Brantley Has Not Shown That the Decision to Prosecute Her Was Based Upon Any Constitutionally Impermissible Standard.**

Apart from failing to show that she was similarly situated to McMillan, Brantley's selective prosecution claim fails for another reason.  She has failed to establish that the decision to prosecute her, but not McMillan, was based on an unjustifiable standard such as race, religion, or other arbitrary classification." United States v. Armstrong, 517 U.S. 456, 464, 116 S. Ct. 1480, 1486 (1996).

Brantley asserts that the impermissible "arbitrary classification" was her exercise of her Fifth Amendment right against self-incrimination.  But that assertion cuts no ice at all.  Brantley admitted to the police that she had been pulled over, that someone had been injured, and that she had fled the scene by herself. Thus, Brantley, on her own, volunteered information which was sufficient to self-

13

incriminate for the crime of leaving the scene of a lawful traffic stop.  It follows that her refusal to identify Morris was, at that point, irrelevant to any Fifth Amendment privilege she asserted after the fact.

Nor is there any merit to Brantley's argument that she was unconstitutionally prosecuted because the victims of the crime Morris committed (while with her) were law enforcement.  As we have already observed, the murders Brantley and McMillan had knowledge of involve different deterrence interests.  It does not offend the Constitution when a prosecutor considers the potential deterrent effect of a case's prosecution.  See Armstrong, 517 U.S. at 465, 116 S. Ct. at 1486 ("Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."); see also United States v. Rice, 659 F.2d 524, 527 (5th Cir. Unit A Oct. 1981) (concluding, in a criminal tax case, that "selection for prosecution based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws.  Since the government lacks the means to investigate every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media.") (quoting United States v. Catlett, 584 F.2d 864, 868 (8th Cir. 1978)).  And there is nothing in our

14

Constitution that prohibits a prosecutor from taking into account the circumstances of a crime in making a charging decision. In particular, to the extent Brantley was prosecuted because the United States aimed to deter witnesses to police shootings from concealing those crimes, that decision was neither arbitrary nor unconstitutional. The executive branch enjoys the discretion to treat violence against a law enforcement official (when committed while the officer is in the line of duty) differently than violence against civilians. And, in fact, the respective executive branches of our federal and state governments have elected to do just that. See, e.g., Fla. Stat. § 921.141(5)(j) (listing, among the aggravating factors for death-penalty consideration, "The victim of the capital felony was a law enforcement officer engaged in the performance of his or her official duties."); see also Collier v. Turpin, 177 F.3d 1184, 1203 (11th Cir. 1999) (recognizing, as an aggravating circumstance of murder conviction, the fact that murder victim was police officer); cf. USSG § 3A1.2(c)(1) (six-level enhancement if defendant assaulted law enforcement officer).

Brantley's prosecution publicized the fact that those who conceal evidence about the capital murder of a police officer will be prosecuted and that fact, without question, could have a deterrent effect on others. The district court did not

15

commit error when it denied Brantley's motion to dismiss based on her claim of selective prosecution.[5]

### B.    Brantley's Prosecution Did Not Violate Her Fifth Amendment Privilege Against Self-Incrimination

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."  U.S. Const., Amend. V. However, a suspect is on different footing once she knowingly and voluntarily waives her right to remain silent by answering some of law enforcement's questions.  If she thereafter wishes to invoke her right to remain silent, she "must articulate [her] desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent."  Coleman v. Singletary, 30 F.3d 1420, 1424 (11th Cir. 1994), cert. denied, 514 U.S. 1086 (1995).

Brantley argues that, because reporting Morris's crime (of possessing a firearm used to murder two police officers) would have revealed a crime she had committed (leaving the scene of a traffic stop), her prosecution for misprision violates her Fifth Amendment rights.  We disagree.

Brantley's argument is fatally flawed in at least this respect:  in the district court, she was not prosecuted for her silence.  Rather, she was prosecuted because

---

[5] We also conclude that, because Brantley did not present a colorable claim of selective prosecution, the district court did not abuse its discretion in refusing to hold an evidentiary hearing on that issue.

she knowingly participated in affirmative acts of concealment of Morris's crime—i.e., (1) hiding herself and the car and (2) calling and texting Morris in an effort to conceal *his* crime.  Given the facts of this case, we need not decide whether the Fifth Amendment would protect Brantley from prosecution if all she did was remain silent.  Here, Brantley did not merely remain silent.  As the jury determined, she also concealed evidence.  And the Fifth Amendment does not shield a defendant from prosecution for her affirmative acts of concealment.  See Brogan v. United States, 522 U.S. 398, 404 (1998) ("Proper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely.").  Just as an individual cannot use the Fifth Amendment to shield a false statement to a law enforcement officer (and thus, in that context, defend herself from prosecution for misprision of a felony), neither may Brantley use the Fifth Amendment to shield her affirmative acts of concealing evidence of Morris's crime.

Finally, it is important to note that Brantley freely admitted to the police that she had been pulled over, someone had been "injured," and that she had fled the scene by herself.  She further admitted that she had a passenger in the car, but refused to disclose Morris's last name.  Thus, Brantley herself freely admitted a violation of Florida law by stating that she had fled the scene of a traffic stop.  She did not invoke her right to remain silent before providing the police with any of

17

these details.   Thus, her subsequent prosecution for misprision, which required the government to show affirmative acts of concealment (not merely her silence) did not violate her Fifth Amendment right to remain silent.  This is not a close question.  The district court did not err in failing to <u>sua sponte</u> grant Brantley a judgment of acquittal on the basis of her right against self-incrimination.

## C.    There Was Sufficient Evidence to Support the Jury's Verdict

Brantley next argues that the evidence was insufficient to convict her of misprision.  We reject her contention.  The misprision statute provides that "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States," is guilty of misprision. 18 U.S.C. § 4. The statute, though, has been construed to require also "some affirmative act of concealment or participation." <u>Itani v. Ashcroft</u>, 298 F.3d 1213, 1216 (11th Cir. 2002).

At Brantley's trial, the district court correctly explained that the crime of misprision is comprised of four elements.[6]  The district court's instruction

---

[6] In our earlier decision, which reversed the district court's earlier dismissal of the charge against Brantley, we referenced the essential elements of misprision as follows: "knowledge of a crime and some affirmative act of concealment or participation." <u>United States v. Brantley</u>, 461 F. App'x 849, 851 (11th Cir. 2012).  But, at that time, we were simply reviewing the district court's finding that dismissal of the indictment was warranted because there was no evidence of an affirmative act of concealment by Brantley.  Therefore, only the affirmative act of concealment element of the crime was at issue before the Court at that time. <u>Id</u>. at 851–52.

18

regarding the elements of the crime of misprision is consistent with the definition articulated by the Third Circuit.  See Baer v. United States, 722 F.3d 168, 176 (3rd Cir. 2013).  We hereby adopt the Third Circuit's definition and conclude that the elements of the crime of misprision are: "(1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime."  Id. (quoting United States v. Gebbie, 294 F.3d 540, 544 (3d Cir. 2002) (internal quotations omitted)).  We also conclude that the district court properly instructed the jury that, in order to find Brantley guilty of the crime of misprision, the Government was required to prove each of those four elements beyond a reasonable doubt.

The next question is whether there was sufficient evidence adduced at trial to support the jury's verdict.  We will uphold a conviction as supported by sufficient evidence "if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. Jiminez, 564 F.3d 1280, 1284–85 (11th Cir. 2009) (internal quotation marks omitted).  We resolve "all reasonable inferences and credibility evaluations in favor of the jury's verdict" and leave a defendant's convictions undisturbed "'unless no trier of fact could have

---

We cited Itani in discussing the element of the crime requiring an affirmative act of concealment. However, the question before us in Itani was not the proper delineation of the elements of misprision of a felony, but rather whether misprision constitutes a crime of moral turpitude.  298 F.3d at 1216.  In Itani, we were not called upon to address what elements must be established to prove the crime of misprision.

19

found guilt beyond a reasonable doubt.'" United States v. Tinoco, 304 F.3d 1088, 1122 (11th Cir. 2002) (quoting United States v. Calderon, 127 F.3d 1314, 1324 (11th Cir. 1997)).

The only element of the crime that Brantley has challenged on sufficiency grounds is the fourth one, requiring an affirmative act of concealment. At trial, the jury heard evidence that Brantley fled the scene after Morris shot and killed the police officers. The jurors also heard evidence indicating that in the minutes following the murder of the officers, Brantley and Morris spoke during three phone calls. The jury further heard evidence that, at around the same time, Brantley and Morris exchanged text messages about concealing the car and staying loyal. After her conversations with Morris, Brantley actually concealed the car and hid herself in a distant apartment away from the vehicle. A reasonable jury could conclude that the subject of the telephone calls was similar to the subject of the text messages — i.e., they involved discussions about how and where to hide evidence (the car). The car linked Brantley to Morris and also linked Morris to the possession of the weapon involved in the murder of the two police officers, which was committed in Brantley's presence. And, Morris, who Brantley knew to be a felon, committed the murders while being in possession of a firearm.

In response to a question on the verdict form asking it to identify Brantley's affirmative act or acts of concealment, the jury stated that "[t]he defendant

20

knowingly and willfully concealed her knowledge of the possession of a firearm and ammunition by a convicted felon from the authorities <u>by coordinating via phone calls and text messages with Dantae [sic] Morris</u>."  (Emphasis added).  A reasonable jury could conclude based upon the evidence presented at trial that the coordination between Brantley and Morris, both phone calls and text messages, was hiding the car.

Nor is it significant that the jury declined the district court's request to further explain its answer to the special interrogatory.  In <u>United States v. Bran</u>, 776 F.3d 276 (4th Cir. 2015), Bran argued that the district court erred in denying his motion for judgment of acquittal.  At trial, the district court instructed the jury to return a general verdict on a felon in possession count and, if the jury determined Bran was guilty, to then answer a three-part special interrogatory.  <u>Bran</u>, 776 F.3d at 278–79.  Somewhat similar to what occurred below, the jury in <u>Bran</u> returned a general verdict of guilty, but failed to answer one of the three parts of a special interrogatory.  <u>Id</u>.  Bran moved for a judgment of acquittal based on the jury's failure to answer the one part of the special interrogatory.  <u>Id</u>. at 279.  The Fourth Circuit held that Bran's focus on the jury's failure to answer part of the special interrogatory ignored the jury's general verdict.  <u>Id</u>. at 280.  As the <u>Bran</u> court noted, "the jury's general guilty verdict alone is sufficient to uphold [his] conviction."  <u>Id</u>.  Here, as in <u>Bran</u>, the jury's general guilty verdict necessarily

21

includes a finding that Brantley engaged in an affirmative act (or acts) of concealment. There is more than sufficient evidence in the record to support that verdict.

Finally, there was sufficient evidence of affirmative acts of concealment to support the jury's guilty verdict. "[R]eceipt or possession of evidence has regularly been considered a sufficient affirmative act to support conviction under the misprision statute." United States v. Davila, 698 F.2d 715, 718 (5th Cir. 1983); see also United States v. King, 402 F.2d 694 (9th Cir. 1968). So has the *removal* of evidence. United States v. Stuard, 566 F.2d 1 (6th Cir. 1977). Again, this case does not involve a mere failure to report a crime. Rather, there is sufficient evidence of affirmative concealment of evidence -- i.e., the removal and hiding of evidence related to a crime (the car) -- to support the jury's finding of an affirmative act of concealment. After review of this record, we cannot say that no trier of fact could have found Brantley guilty beyond a reasonable doubt. Therefore, the district court did not err in denying her a judgment of acquittal and declining to order a new trial. See Tinoco, 304 F.3d at 1122; Calderon, 127 F.3d at 1324.

## V. CONCLUSION

For the foregoing reasons, Brantley's misprision conviction is

**AFFIRMED**.

22

MARTIN, Circuit Judge, concurring:

The shocking events out of which this appeal arises were senseless and tragic. Dontae Morris's June 29, 2010 murder of two police officers can only be characterized as a grave and unspeakable crime. But Courtnee Brantley, whose appeal we consider here, was never charged with those murders. That means our job is to evaluate her claims as they relate to the crime for which the jury convicted her—misprision of a felony in violation of 18 U.S.C. § 4. Specifically, we must determine "if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. Jiminez, 564 F.3d 1280, 1285 (11th Cir. 2009) (quotation omitted). Even viewing all of the evidence in the light most favorable to the government and drawing all reasonable factual inferences in favor of the jury's verdict, id. at 1284, I agree with what I gather to be the District Judge's sense that Ms. Brantley's is a close case. Ultimately, I reach the same conclusion as the majority—that there is sufficient evidence to support Ms. Brantley's conviction. I write separately, however, because I do not share the majority's view of the strength of the case against her.

As the majority notes, misprision of a felony is a rarely charged crime. In order to prove a violation of 18 U.S.C. § 4, the government must offer sufficient evidence to demonstrate: "(1) the principal committed and completed the felony alleged [here, the felony is Mr. Morris being a felon in possession of a firearm];

(2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime." Baer v. United States, 722 F.3d 168, 176 (3d Cir. 2013) (quotation omitted).  On appeal, Ms. Brantley challenges only the fourth element, arguing that the government has not offered sufficient evidence to prove that she concealed Mr. Morris's crime of being a felon in possession.  This appeal concerns Ms. Brantley's second trial, because her first jury could not unanimously agree to convict her.

As I've said, in order to convict Ms. Brantley of the crime of misprision of a felony, the government was required to prove that she took an affirmative step to conceal Mr. Morris's crime of possessing a firearm as a convicted felon.  See United States v. Johnson, 546 F.2d 1225, 1227 (5th Cir. 1977).  Our precedent is clear that "[t]he mere failure to report a felony is not sufficient" to establish concealment.  Id.  At the same time, I am not aware of any binding precedent from our court holding that *intent* to conceal the commission of a felony from the government (without the carrying out of the corresponding act) is sufficient to prove this element.  Cf. Neal v. U.S., 102 F.2d 643, 650 (8th Cir. 1939) ("An intent to conceal from the government, if such intent existed, that is not carried out is not an offense under the statute.").  One of our sister Circuits has recognized that even knowing where a perpetrator is hiding and having conversations with him about how to escape is not sufficient, absent some positive act of concealment.  Id.

24

In most misprision cases, a defendant's affirmative act of concealment is readily apparent. This is true of the out-of-circuit cases the majority relies upon in support of Ms. Brantley's conviction. In United States v. Davila, 698 F.2d 715 (5th Cir. 1983),[1] the concealment element of misprision of a felony was met because Mr. Davila agreed to hold approximately $15,000 in payoff money in the service of the underlying conspiracy to suborn perjury. Id. at 718. In United States v. Stuard, 566 F.2d 1 (6th Cir. 1977) (per curiam), the defendant's actions of removing stolen whiskey from a truck, replacing it with sandbags, and driving the truck to another state were deemed sufficient affirmative acts to conceal the underlying theft. Id. at 1.[2] As the majority recognizes, receipt of or hiding evidence of a felony is typically sufficient to establish an affirmative act of concealment.

This case is not as clear. The majority holds that Ms. Brantley's affirmative act of concealment was hiding her car after she left the scene of the crime.

_____

[1] Only Fifth Circuit decisions issued before October 1, 1981, are binding on this Court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[2] The majority also relies upon United States v. King, 402 F.2d 694 (9th Cir. 1968). In that case, however, the Ninth Circuit held that the government had not offered sufficient evidence to prove the defendant's intent to conceal the underlying crime of bank robbery. Id. at 697. Even though the defendant received some of the proceeds from the robbery, the government had offered "no testimony indicating that a purpose of defendant in receiving the money was to hide it for the principals, or to otherwise conceal information about the crime." Id. at 696. This case does not support Ms. Brantley's conviction. Rather, it highlights the government's burden to offer evidence proving a defendant's intent to conceal the underlying felony.

25

Specifically, the majority concludes that by hiding the car she was driving, Ms. Brantley concealed evidence that Mr. Morris committed the crime of being a felon in possession of a firearm.  The District Court expressed dissatisfaction with this interpretation of the evidence in its well-reasoned Order denying Ms. Brantley's motion for a judgment of acquittal.  Although the question of whether Ms. Brantley concealed evidence of a crime may seem simple, a closer look is necessary.

First, it is not readily apparent to me how Ms. Brantley's automobile is evidence of Mr. Morris's crime of being a felon in possession of a firearm.  Mr. Morris's gun was not in her car when she drove away.  Neither did she flee with his ammunition.  Nevertheless, the government asserts that the car was "evidence" of the underlying felony because police officers could have gleaned from her car a "scent sample" to aid their bloodhound in tracking Mr. Morris after his escape.  I agree with the District Court that this argument strains credulity.  The record before us contains no evidence that the police made any attempt to capture a scent sample even after recovering Ms. Brantley's car, despite that Mr. Morris was still missing and it would still have been possible to do so.  Despite this, the majority accepts without discussion that the car was an evidentiary link between Mr. Morris and his underlying crime of being a felon in possession of a firearm.

Second, this record reveals no evidence that Ms. Brantley had the required intent to conceal Mr. Morris's felony at the time she drove away from the scene of

26

the crime.  Indeed, the government recognizes that Ms. Brantley "recoiled" after Mr. Morris shot the officers, and then "fled" the crime scene.  Ms. Brantley's reaction, then, was one of shock, rather than conscious reflection.  There was no evidence offered at trial to prove that Ms. Brantley drove away from the scene of the crime with the intent to keep her car from the police officers' bloodhounds.

Third, Ms. Brantley took no affirmative steps to conceal the car after communicating with Mr. Morris.  It is important to carefully consider the sequence of events.  First, immediately after the crime, there were three calls between Ms. Brantley and Mr. Morris, the content of which we don't know.  Next, Mr. Morris texted Ms. Brantley saying, "Your ride dont need 2 be park by the spot neither," to which she responded, "No. Still n here bt way round corner.  I nd to move it sumwhere else tho."  She then pledged her loyalty to him.

But there is no evidence that Ms. Brantley then moved the car after sending these texts.  Neither is there evidence that she tried to clean the car.  Instead she stayed where she was (at her friend's apartment complex) until the police found her there.  It bears repeating that our Circuit has no rule allowing intent to conceal the commission of a felony, by itself, to support a conviction for misprision.  See Neal, 102 F.2d at 650.  The texts, which were not followed up with actions, do not prove that Ms. Brantley concealed evidence of Mr. Morris's crime.  And her declarations of loyalty do not alter this conclusion.

27

Finally, the only "affirmative act" we have to support the jury's verdict is Ms. Brantley's initial decision to park her car at a friend's apartment complex, backing into the spot in a way that her missing license tag was hidden. Certainly, Ms. Brantley's conduct in this regard could plausibly be interpreted as her intent to avoid the authorities. However, this cannot be the affirmative act that supports her conviction. Again, the "mere failure to report a felony is not sufficient to constitute a violation of 18 U.S.C.A. § 4." Johnson, 546 F.2d at 1227. In fact, if Ms. Brantley had remained at the scene of the crime but refused to answer questions, she would not be guilty of misprision. It follows, therefore, that rendering herself unavailable for questioning cannot be the required affirmative act of concealment.

That said, Ms. Brantley faces a very tough standard in seeking to overturn the jury's verdict. On appeal, we are required to construe all inferences in favor of the jury's verdict. Having done so, I conclude that a reasonable factfinder could find that by parking her car the way she did, Ms. Brantley intended to conceal Mr. Morris's murder of the two police officers. That murder, in turn, involved a firearm. A reasonable jury could find that Ms. Brantley surmised that the police were looking for a vehicle without tags, and with that in mind, thought that concealing her vehicle would help Mr. Morris evade detection for having possessed the firearm he used to murder the officers. Mr. Morris told her that the

28

car "dont need 2 be park by the spot neither." And she assured him that it wasn't—it was "way round corner." Although no affirmative acts of concealment transpired after this text exchange, a reasonable factfinder could infer from her response that her earlier act of parking at her friend's apartment complex was done with the required intent to conceal. On this narrow basis, I concur in the majority's judgment that there is sufficient evidence to support Ms. Brantley's conviction.

The majority holds that the evidence adduced at trial amply supports the jury's finding. The majority so holds despite the fact that this defendant did not conceal any fruit or instrumentality of the crime. In that way, I believe this case stands in stark contrast to the typical charge of misprision of a felony. Nevertheless, the standard for a sufficiency-of-the-evidence claim places a heavy burden on a defendant: to prove that no rational factfinder could have found that the evidence established guilt beyond a reasonable doubt. Since I agree with the conclusion ultimately reached by the District Judge, that there is a reading of the evidence that supports the jury's verdict, I concur in the Judgment of the majority.

29