

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-5-2001

# Bennett v. Murphy

Precedential or Non-Precedential:

Docket 00-2667

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Bennett v. Murphy" (2001). *2001 Decisions.* Paper 282.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/282

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 5, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2667

SALLY BENNETT, ADMINISTRATRIX OF
THE ESTATE OF DAVID BENNETT

v.

FRANCIS J. MURPHY, III, Individually and as a
Pennsylvania State Police Officer of the Commonwealth of
Pennsylvania; MARK F. NOWAKOWSKI, Individually and
in his capacity as a Corporal of the Pennsylvania State
Police of the Commonwealth of Pennsylvania

      Francis J. Murphy, III,
      Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 94-cv-00214)
District Judge: Honorable Robert J. Cindrich

Submitted Under Third Circuit LAR 34.1(a)
September 10, 2001

Before: MANSMANN, RENDELL and ALDISERT,
Circuit Judges.

(Filed December 5, 2001)

Vincent A. Coppola, Esquire
Pribanic & Pribanic
513 Court Place
First Floor
Pittsburgh, PA 15219

Victor H. Pribanic, Esquire
Pribanic & Pribanic
1735 Lincoln Way
White Oak, PA 15131

 Counsel for Appellee

D. Michael Fisher
 Attorney General
John G. Knorr, III
 Chief Deputy Attorney General
 Chief, Appellate Litigation Section
Kemal A. Mericli
 Senior Deputy Attorney General
Office of Attorney General
 of Pennsylvania
Department of Justice
Strawberry Square
15th Floor
Harrisburg, PA 17120

 Counsel for Appellant

OPINION OF THE COURT

MANSMANN, Circuit Judge:

In this Section 1983 civil rights action alleging use of excessive force by a police officer in violation of the Fourth Amendment, state trooper Francis J. Murphy, III, appeals from the District Court's denial of his motion for summary judgment based on qualified immunity. In its recent decision in Saucier v. Katz, 531 U.S. 991, 121 S.Ct. 2151 (2001), the Supreme Court articulated a new framework for analyzing qualified immunity claims which is applicable here: the question of whether an officer is entitled to qualified immunity is distinct from whether he used

unreasonable force. Because the District Court did not have the benefit of this framework when it considered Murphy's entitlement to qualified immunity, we will vacate the order of the District Court and remand this matter for reconsideration in accordance with the principles announced in Saucier.

I.

This case originated in a 1994 prolonged armed standoff between David Bennett and police officers in a field near an apartment complex in Greensburg, Pennsylvania. What began as a domestic dispute culminated in Bennett's being fatally shot by Trooper Murphy. Sally Bennett, David Bennett's mother and the administratrix of his estate, filed this action alleging violation of 42 U.S.C. S 1983.1 The matter went to trial in September 1996 and the jury returned a verdict in favor of Murphy. One year later, Bennett filed a motion for a new trial pursuant to Fed. R. Civ. P. 60, alleging that information in Murphy's personnel records relevant to his credibility had been withheld from Bennet during discovery. Because it was "satisfied that Bennett was prejudiced by being denied the opportunity to consider her use of this important information," the District Court found that Bennett was entitled to a new trial. Bennett v. Murphy, No. 94-cv-00214, mem. order at 14 (W.D. Pa. Jan. 7, 2000). In granting Bennett's motion, the District Court rejected Murphy's argument that a new trial was precluded by Murphy's entitlement to qualified immunity: "We must recognize . . . that the factfinding process in a case of deadly force is usually more complicated than that of an alleged search or seizure. We find that the facts from which we would make such a ruling must first be determined by a jury." Id. at 6.

Prior to the trial, Murphy filed a motion for reconsideration and sought summary judgment based on

_____

1. Originally Bennett, on behalf of herself and her son's estate, made numerous state and federal law claims against Murphy and Corporal Mark Nowakowski of the Pennsylvania State Police. All claims except those of the estate against Murphy alleging violation of Section 1983 were ultimately dropped or dismissed.

his assertion of qualified immunity. The District Court denied these motions. Noting that it had "informally and unfavorably addressed" Murphy's entitlement to qualified immunity in its January 7th order granting Bennett's motion for a new trial, the District Court addressed the issue of qualified immunity at length. Bennett v. Murphy, 127 F. Supp.2d 689, 690 (W.D. Pa. 2001). Concluding again that Murphy was not entitled to qualified immunity, the District Court recounted the facts surrounding the shooting in the light most favorable to Bennett. 2 The Court then asked whether, given those facts, it was "indisputably reasonable as a matter of law" for Murphy to have used deadly force against Bennett. Id. at 690. The District Court was unable to answer this question in the affirmative and concluded that the determination was best left to the jury: "[T]here is no clearly defined standard of reasonableness for the court to apply and . . . such a standard should emerge from the conscience of the community, not the mind of a single judge." Id. at 699. The District Court took the position that, as a general rule, qualified immunity is unavailable in cases involving allegations of excessive force:

_____

2. The District Court, "ignoring evidentiary disputes," summarized the facts as follows:

> The state police were called to the courtyard of a group of apartment
> buildings on the evening of January 4, 1994 to confront a man,
> David Bennett, who they soon learned was distraught at being
> unable to see his girlfriend. He was armed with a single shot
> shotgun that he held vertically in front of him, with the barrel
> pointed up at his head, and the stock facing down. He was "very
> deliberate in holding [the gun] toward himself or in the air," and did
> not point the gun at anyone, including state troopers. . . . He stated
> that he wanted to kill himself. . . . As the troopers took up positions
> surrounding him in the open area between the apartment buildings,
> he became agitated and began moving toward a group of them, but
> stopped for perhaps four seconds before he was shot.. . . Murphy
> was positioned 80 yards behind Bennett when he fired. Almost an
> hour passed between the time the state troopers first arrived on the
> scene, and the time Bennet was shot.
>
>  Bennett admittedly was angry and defiant in the face of a group
> of determined, armed state troopers.

Id. at 690-691. (Citations to the record omitted.)

> [E]xcessive force cases are typically riven with factual
> disputes about key events. Even where they are not,
> the decisive question is one of the reasonableness of
> the officer's conduct in light of all the circumstances.
> . . . [T]his is a quintessential jury question.

Id. at 694. The District Court concluded that the availability
of qualified immunity turned on Murphy's credibility:

> [I]t is only from the mind and mouth of Murphy that
> we can supply the crucial "facts and circumstances
> confronting" our hypothetical, objectively reasonable
> officer. It is only from the testimony of Murphy that we
> can gather the information which he maintains creates
> the justification for the use of deadly force -- i.e., the
> belief that existed in his own mind that his fellow
> officers were in imminent danger of death or serious
> bodily injury at the hands of Bennett.

Id. at 692. Because this credibility determination could be
made only by a jury, the District Court reasoned that
Murphy was not entitled to summary judgment on the
basis of qualified immunity. Murphy's motion was denied
and this timely appeal followed.

Because this appeal involves solely a question of law and
does not turn on disputed issues of fact, we have
jurisdiction pursuant to the collateral order doctrine under
28 U.S.C. S 1291.3 See Johnson v. Jones, 515 U.S. 304, 313
(1995); Mitchell v. Forsyth, 472 U.S. 511 (1985).

II.

While this appeal was pending, the Supreme Court
issued its decision in Saucier v. Katz, 531 U.S. 991, 121
S.Ct. 2151 (2001), clarifying the analysis to be undertaken
by district courts and courts of appeals considering claims
of qualified immunity in cases alleging excessive use of force.4

_____

3. The District Court did not identify facts in dispute, nor does this
appeal require that we evaluate the facts. Murphy's contention on appeal
is that even if all controverted facts are resolved in favor of Bennett,
his
actions were objectively legally reasonable.

4. The decision in Saucier addressed the qualified immunity defense in
the Bivens context. The analytical framework outlined in Saucier is,

5

In Saucier, the Court held that the Court of Appeals for the Ninth Circuit erred when it adopted an approach to qualified immunity which was very similar to the one taken by the District Court in this case: "[T]he ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used . . . ." 121 S. Ct. at 2153. Unless the qualified immunity inquiry is undertaken separately from the constitutional inquiry, it will "become superfluous or duplicative when excessive force is alleged." Id. at 2155.

The Supreme Court stressed that the qualified immunity question must be resolved "at the earliest possible stage in the litigation." Id. at 2156 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)). "Qualified immunity is `an entitlement not to stand trial or face the other burdens of litigation.' " Id. (quoting Mitchell v. Forsyth, 472 U.S. at 526 (1985). "The privilege is `an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " Id.

After Saucier it is clear that claims of qualified immunity are to be evaluated using a two-step process. First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity. In this case it is clear that Bennett's submissions, viewed in the light most favorable to her, do make out a constitutional violation. In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court held that the use of force contravenes the Fourth Amendment if it is excessive under objective standards of reasonableness. If, as the plaintiff 's evidence suggested, David Bennett had stopped advancing and did not pose a threat to anyone but himself, the force used against him, i.e. deadly force, was objectively excessive.

_____

however, applicable to cases under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and to those brought pursuant to Section 1983. Wilson v. Layne, 526 U.S. 603, 609 (1999).

Once it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established. That is, in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited? The focus in this step is solely upon the law. If it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to qualified immunity. If the requirements of the law would have been clear, the officer must stand trial.

Saucier's holding regarding the availability of qualified immunity at the summary judgment stage does not mean that an officer is precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff. An officer may still contend that he reasonably, but mistakenly, believed that his use of force was justified by the circumstances as he perceived them; this contention, however, must be considered at trial. As the District Court noted:

> [E]ven where the officer must stand trial, he still benefits from the favorable law precluding consideration of intent or motive, use of hindsight in judging tense, unpredictable situations, and allowances for mistaken judgments. . . .

Bennett, 127 F. Supp. at 694.

III.

The decision in Saucier clarified what was not apparent before –- that the immunity analysis is distinct from the merits of the excessive force claim. We have concluded that the first prong of the two-step Saucier test is satisfied. Given the District Court's thorough familiarity with all of the aspects of this matter, it is appropriate that it be given the first opportunity to apply the second part of the Saucier analysis. We will, therefore, vacate the order of the District Court and remand this matter for further consideration.

7

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit