NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2816
_____

ELIAS KARKALAS,
                    Appellant

v.

LINDA MARKS, Esquire; KIMBERLY BRILL;
UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-19-cv-00948)
District Judge:  Honorable Mark A. Kearney
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 12, 2020

Before:  McKEE, AMBRO, and PHIPPS, *Circuit Judges*

(Filed: February 11, 2021)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PHIPPS, *Circuit Judge*.

For over thirty years, Dr. Elias Karkalas was a family practice physician in a Philadelphia suburb. He also had an interest in cyber medicine, and in 2005, he responded to a recruiter's advertisement seeking doctors to review online prescription requests for an internet pharmacy company, Rx Limited. At that time, Rx Limited was operated by Paul Calder Le Roux, who would later plead guilty to several criminal charges related to the company's practices. Karkalas began working for Rx Limited, and between 2005 and 2012, he approved online prescriptions for several drugs. As he did so, he understood that federal law required an in-person encounter to prescribe a controlled substance. *See* 21 U.S.C. §§ 829(b), (e); 21 C.F.R. § 1306.04(a).

One drug that Karkalas prescribed online was Fioricet – a combination drug used to treat tension headaches. Although Fioricet is not expressly listed as a controlled substance, it contains butalbital, a derivative of barbituric acid, which *is* listed as a controlled substance. 21 U.S.C. § 812, Sch. III(b)(1) (designating "[a]ny substance which contains any quantity of a derivative of barbituric acid" as a Schedule III controlled substance); 21 C.F.R. § 1308.13(c)(3) (same). Nevertheless, the *Physicians' Desk Reference*, a reference manual for prescribers, did not designate Fioricet as a controlled substance during the years in which Karkalas prescribed it.[1]

---

[1] The *Physicians' Desk Reference* currently identifies Fioricet as a Schedule III controlled substance. *See* Fioricet Capsules Drug Summary, Prescribers' Digital Reference, https://www.pdr.net/drug-summary/Fioricet-Capsules-acetaminophen-butalbital-caffeine-3284.2260 (last visited Feb. 9, 2021).

Karkalas's online approval of Fioricet prescriptions caught the attention of a diversion investigator at the Drug Enforcement Administration and a federal prosecutor who were investigating Rx Limited. They both believed that, under federal law, Fioricet constituted a controlled substance because it contained butalbital. Through an undercover investigation, they learned that Karkalas was prescribing Fioricet online not just for tension headaches but also for other maladies such as knee pain and hemorrhoids.

In 2013, a federal grand jury in Minnesota returned an 85-count indictment related to Rx Limited against eleven defendants. It named Karkalas in 38 counts. Many of those counts related to the illegal distribution of Fioricet, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(E), (h)(1), (h)(4), but the indictment also charged Karkalas with conspiracy, wire fraud, mail fraud, and introducing misbranded drugs into interstate commerce. Karkalas was arrested at his office and detained pretrial for six months, including four-and-a-half months in detention centers in multiple states and six weeks in a halfway house. He was later released to home confinement with an ankle monitor.

Throughout the pretrial period, Karkalas asserted that Fioricet was not a controlled substance. He emailed and called the prosecutor and investigator, and he even voluntarily traveled to Washington, D.C. to meet with them, but they were unconvinced. Karkalas also filed motions in the Minnesota trial court to dismiss the Fioricet charges and to exclude evidence of his distribution of Fioricet. But that court denied both motions, concluding that Fioricet – because it contains butalbital – is a Schedule III controlled substance. *See United States v. Oz*, 2017 WL 342069, at *2, *3–5 (D. Minn. Jan. 23, 2017) (citing 21 U.S.C. § 812, Sch. III(b)(1)); *United States v. Oz*, 2016 WL

3

1183041, at \*2, \*4–6 (D. Minn. Mar. 28, 2016). Despite prevailing on those motions, the United States voluntarily dismissed ten of the charges against Karkalas related to his distribution of Fioricet.

The case against Karkalas and three other defendants proceeded to a jury trial, and there it continued to turn in his favor. In the middle of its case-in-chief, the United States dropped the remaining charges related to the distribution of Fioricet. And in returning its verdict, the jury acquitted Karkalas and the other defendants of all other charges.

To vindicate himself beyond that acquittal, Karkalas filed this two-count civil lawsuit in the Eastern District of Pennsylvania. In Count One of the complaint, Karkalas asserts that the prosecutor and investigator violated his Fourth and Fifth Amendment rights by knowingly presenting false and misleading testimony and by prosecuting him without probable cause, leading to his unlawful pretrial detention. In Count Two, Karkalas sues the United States for malicious prosecution under the Federal Tort Claims Act.

The defendants moved to dismiss the counts against them – the prosecutor and investigator pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), and the United States pursuant to Rules 12(b)(1) and 12(b)(6). The District Court granted those motions on several alternative grounds and dismissed Karkalas's amended complaint with prejudice. In doing so, the District Court exercised subject-matter jurisdiction over the federal questions in Count One, *see* 28 U.S.C. § 1331, but determined that it lacked personal jurisdiction over the individual defendants. In addition, the District Court determined that no *Bivens* cause of action could be implied

4

against those defendants, who were also shielded from suit due to qualified immunity (and the prosecutor further protected by absolute immunity). On Count Two, the District Court concluded that it lacked jurisdiction due to the United States' sovereign immunity for discretionary functions and for intentional torts (the latter as to only the conduct of the prosecutor). *See id.* §§ 1346(b)(1), 2674, 2680(a), (h).

Karkalas timely appealed, bringing the case within this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291. The individual defendants no longer press the personal jurisdiction defense, *see* Appellees' Br. 15 n.3, thereby consenting to such jurisdiction. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) ("A defendant may . . . consent to personal jurisdiction by waiving any objection to it." (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982))). They have preserved and presented their other defenses. In reviewing the dismissal of the complaint *de novo*, *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006), we will affirm the District Court's judgment.

I.

In Count One, Karkalas sues the prosecutor and the investigator in their individual capacities, seeking to recover damages. He does so through a judicially implied cause of action, a *Bivens* claim, which permits a damages remedy for a person whose constitutional rights have been violated by agents of the federal government. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). *See generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In response, the individual defendants argue that a *Bivens* action is unavailable in this context, that the prosecutor

5

qualifies for absolute immunity, and that both defendants are entitled to qualified immunity. The last of those arguments – qualified immunity – is the most natural starting place because it is common to both individual defendants and because it proves dispositive.

Qualified immunity shields government officials from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020). At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional violation and (ii) whether the asserted constitutional right is clearly established. *See Wood v. Moss*, 572 U.S. 744, 757 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *see also Conn v. Gabbert*, 526 U.S. 286, 290 (1999) (explaining that the qualified immunity inquiry requires "a court [to] determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all").

To evaluate the first prong of qualified immunity on a motion to dismiss, this Court follows a three-step plausibility inquiry. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (noting that "it is often beneficial" for courts to address the two prongs of the qualified immunity analysis in order, even though it is no longer mandatory). The first step involves an articulation of the elements of the claim. *See Connelly*, 809 F.3d at 787

6

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The second step scrutinizes the complaint to identify and disregard any "'formulaic recitation of the elements of a . . . claim' or other legal conclusion," *id.* at 789 (quoting *Iqbal*, 556 U.S. at 681), as well as allegations that "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual," *id.* at 790 (quoting *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). The third step evaluates the plausibility of the remaining allegations – after first assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor. *See id.* at 787, 790; *see also Iqbal*, 556 U.S. at 679; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). At that point, if a complaint alleges "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of a claim, then it plausibly pleads a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But if "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

As set forth below, under this plausibility analysis, Karkalas fails to state a claim for a constitutional violation under Count One. And because the complaint fails to plausibly allege that the prosecutor or investigator violated Karkalas's constitutional rights, those individual defendants are entitled to qualified immunity. That conclusion renders unnecessary an analysis of the second prong of qualified immunity, as well as the

7

other defenses related to absolute immunity and the unavailability of a *Bivens* action in this context. *See Wood*, 572 U.S. at 757 (assuming without deciding that a *Bivens* cause of action is available and resolving based on qualified immunity); *Hui v. Castaneda*, 559 U.S. 799, 807 (2010) ("Even in circumstances in which a *Bivens* remedy is generally available, an action under *Bivens* will be defeated if the defendant is immune from suit.").

A.

Karkalas first brings a Fourth Amendment malicious prosecution claim against the individual defendants. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."). Under the three-step plausibility inquiry, he fails to allege a violation of the Fourth Amendment.

1. Articulation of the elements. A claim for Fourth Amendment malicious prosecution consists of the following elements:

(1) the defendant initiated a criminal proceeding;

(2) without probable cause;

(3) maliciously or for a purpose other than bringing the plaintiff to justice;

(4) causing the plaintiff to suffer a deprivation of liberty consistent with the concept of seizure; and

(5) the outcome of the criminal proceeding favored the plaintiff.

*See Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (citation omitted); *see also Black v. Montgomery County*, 835 F.3d 358, 364 (3d Cir. 2016) (citation omitted).

8

2.  Identification of deficient allegations.  Several of Karkalas's conclusory allegations should be disregarded.  In particular, Karkalas alleges that the individual defendants made "knowingly false presentations" to the grand jury, namely, (i) that Fioricet is a controlled medication, (ii) that Karkalas knew so, and (iii) that he would continue to prescribe it.  First Amended Complaint ¶ 86 (App. 77).  But grand jury proceedings are shrouded in secrecy.  *See* Fed. R. Crim. P. 6(e)(2)(B); *see also Rehberg v. Paulk*, 566 U.S. 356, 374 (2012) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." (citations omitted)); *United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997) ("Fed. R. Crim. P. 6(e) is intended to preserve the tradition of grand jury secrecy, creating a general rule of confidentiality for all 'matters occurring before the grand jury.'").  And the complaint nowhere indicates how Karkalas became privy to this secret information.  *See* District Ct. Op. 32 (App. 32) ("Given the secrecy of the grand jury proceeding, we question how Dr. Karkalas knows what [the prosecutor and investigator] told the grand jury . . . .").  Without providing a factual basis for his purported knowledge of the grand jury proceedings, Karkalas's allegations that the individual defendants made false statements to the grand jury are "speculative" and "threadbare."  *Connelly*, 809 F.3d at 790; *see also Oliver v. Roquet*, 858 F.3d 180, 192 (3d Cir. 2017) ("[A] plaintiff's allegations 'must be enough to raise a right to relief above the speculative level,' and must reflect 'more than a sheer possibility that a defendant has acted unlawfully.'" (quoting *Twombly*, 550 U.S. at 555, and *Iqbal*, 556 U.S. at 678)); *Peñalbert-Rosa*, 631 F.3d at 595–96 ("[S]ometimes a threadbare factual allegation bears insignia of its

9

speculative character and, absent greater concreteness, invites an early challenge."). As such, those allegations must be excluded from the plausibility analysis.

Similarly, the complaint alleges that the prosecutor and investigator acted "with malice" in initiating the criminal proceeding against Karkalas. First Amended Complaint ¶ 88 (App. 78). But without supporting factual allegations, that is nothing more than a conclusory reformulation of the malice element of a Fourth Amendment malicious prosecution claim, which should be disregarded. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citation omitted)).

3. Evaluation of the remaining allegations. Without crediting the deficient allegations, Karkalas has failed to plausibly allege two essential elements of a Fourth Amendment malicious prosecution claim: lack of probable cause and malice. A federal indictment triggers a rebuttable presumption of probable cause to prosecute. *See Goodwin v. Conway*, 836 F.3d 321, 329 (3d Cir. 2016); *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989); *see also Kaley v. United States*, 571 U.S. 320, 328 (2014) ("[A]n indictment fair upon its face and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged." (citations and internal quotation marks omitted)). And without the allegations concerning the individual defendants' statements to the grand jury, the remainder of the complaint does not rebut that presumption. *See Rose*, 871 F.2d at 353 (explaining that the presumption of probable cause "may be rebutted by evidence

10

that the [indictment] was procured by fraud, perjury or other corrupt means").  Likewise, without the excluded conclusory allegation of malice, the remaining allegations – which do not reflect a prosecution motivated by "ill will" or "spite" or some "extraneous improper purpose," *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993) (citation omitted) – do not plausibly suggest that the prosecutor or the investigator acted maliciously.

Karkalas has therefore failed to state a Fourth Amendment malicious prosecution claim, as the complaint does not plausibly allege two necessary elements.  Accordingly, the individual defendants are entitled to qualified immunity for this claim.  *See Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity.").

B.

Karkalas also sues the individual defendants for using fabricated evidence against him in violation of the Fifth Amendment.  *See Halsey v. Pfeiffer*, 750 F.3d 273, 289 (3d Cir. 2014) ("When falsified evidence is used as a basis to initiate the prosecution of a defendant, . . . the defendant has been injured regardless of whether the totality of the evidence, excluding the fabricated evidence, would have given the state actor a probable cause defense in a malicious prosecution action . . . .").  The plausibility analysis for this claim proceeds along the same lines as above, yielding a similar result: Karkalas does not state a plausible claim for a violation of the Fifth Amendment.

11

1.  Articulation of the elements.  For an acquitted criminal defendant, a due process fabricated evidence claim consists of the following elements:

(1) a government actor's production or introduction of evidence or testimony;

(2) at any point before or during a criminal proceeding;

(3) that the government actor knew to be;

(4) false; and

(5) without that fabricated evidence, there is a reasonable likelihood that the defendant would not have been criminally charged.

*See Black*, 835 F.3d at 370–72; *Halsey*, 750 F.3d at 294–95; *see also Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1112, 1115 (9th Cir. 2018); *Zahrey v. Coffey*, 221 F.3d 342, 348–49, 355 (2d Cir. 2000).

2.  Identification of deficient allegations.  As before, Karkalas's allegations as to the statements made to the grand jury are too speculative for inclusion in the plausibility analysis.

3.  Evaluation of the remaining allegations.  Without the disregarded allegations, Karkalas does not plausibly allege *any* element of a fabricated evidence claim.  He attempts to compensate for this shortcoming by referencing statements that the prosecutor made before the Magistrate Judge at the pretrial detention hearing.  Those statements include the assertions that Karkalas was involved with an international drug cartel, that his actions resulted in several drug related deaths, that the evidence against him was overwhelming, and that he presented a flight risk.  But the prosecutor made those statements not through testimony or the admission of evidence, but rather through advocacy – arguing that Karkalas should be detained pursuant to a statutory presumption

12

against release based on the nature of his charges, *see* 18 U.S.C. § 3142(e)(3)(A).

Beyond the dispositive facts that those statements were not evidence and were made *after*

Karkalas was charged, the complaint still lacks any non-conclusory allegations that the

prosecutor knew her statements to be false when she made them. *See Halsey*, 750 F.3d at

295 ("[T]estimony that is incorrect or simply disputed should not be treated as fabricated

merely because it turns out to have been wrong."). Absent plausible allegations stating a

fabricated evidence claim, the individual defendants are entitled to qualified immunity.

*See id.* at 295 ("[W]e expect that it will be an unusual case in which a police officer

cannot obtain a summary judgment in a civil action charging him with having fabricated

evidence used in an earlier criminal case.").

## II.

In Count Two, Karkalas sues the United States for the state-law tort of malicious

prosecution under the Federal Tort Claims Act. The FTCA exposes the United States to

tort liability by waiving its sovereign immunity for certain claims. *See* 28 U.S.C.

§§ 1346(b)(1), 2674. But that waiver is limited by several exceptions, and the United

States invokes two of those jurisdictional defenses here: the discretionary function

exception, *id.* § 2680(a), and the intentional tort exception, *id.* § 2680(h). As explained

below, the discretionary function exception bars Karkalas's malicious prosecution claim,

making it unnecessary to evaluate the United States' remaining defenses.

The discretionary function exception is aptly named. It bars suits against the

United States that challenge "the exercise or performance or the failure to exercise or

perform a discretionary function or duty on the part of . . . an employee of the

13

Government, whether or not the discretion involved be abused." *Id.* § 2680(a). It applies when the challenged acts (i) "involve[d] an element of judgment or choice," and (ii) were "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)); *see also Merando v. United States*, 517 F.3d 160, 164–65 (3d Cir. 2008). Although the exception is "jurisdictional on its face," *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 n.2 (3d Cir. 2012), the United States "has the burden of proving the applicability of the discretionary function exception," *Merando*, 517 F.3d at 164 (citations omitted). Here, where the challenged acts involve the investigation and prosecution of Karkalas, the United States has met that burden.

Both the investigation and the prosecution of Karkalas satisfy the first element of the discretionary function exception. Investigation and prosecution involve judgment or choice. *See Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986) ("Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law." (citations omitted)), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013); *Bernitsky v. United* States, 620 F.2d 948, 955 (3d Cir. 1980) ("Decision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments.").

Similarly, those actions satisfy the second element. Investigatory and prosecutorial decisions are "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *see Bond v. United States*, 572 U.S. 844, 865 (2014) ("Prosecutorial discretion involves

14

carefully weighing the benefits of a prosecution against the evidence needed to convict, the resources of the public fisc, and the public policy of the State."); *Baer v. United States*, 722 F.3d 168, 175 (3d Cir. 2013) ("Whether to pursue a lead, to request a document, or to assign additional examiners to an investigation are all discretionary decisions, which necessarily involve considerations of . . . resource allocation and opportunity costs.").

Karkalas does not challenge those straightforward conclusions directly. Rather, he contends that, even with the government's broad discretion to investigate and prosecute crimes, "there is no discretion to violate the Constitution." Appellant's Br. 22; *see also Pooler*, 787 F.2d at 871 (stating in dicta that "federal officials do not possess discretion" to violate "constitutional rights or federal statutes"). But this case does not present an opportunity to evaluate that legal theory because, as explained above, Karkalas does not allege plausible violations of the Constitution. Without such allegations, "all of the challenged actions . . . involved the exercise of discretion in furtherance of public policy goals," *Gaubert*, 499 U.S. at 334, and the United States thus retains its sovereign immunity for this claim.

\* \* \*

In sum, the District Court properly dismissed the *Bivens* claims against the prosecutor and the investigator as well as the FTCA claim against the United States. We will affirm.

15